583 F.2d 1129
 UNITED STATES of America, Plaintiff-Appellee,
v.
Clarence M. SMALDONE, Carol Jean Reeb, Anita D. Rowland,
Larry Scott Owens, Edna Frances De Santis, John
Henry Routa, Dominic La Rocco, and
Samuel Foderaro, Defendants-Appellants.
 Nos. 76-2179 to 76-2185 and 77-1009.
 United States Court of Appeals,
Tenth Circuit.
 Argued and Submitted May 8, 1978.
Decided Sept. 8, 1978.
Rehearing Denied Oct. 17, 1978.
 
 Cathlin Donnell, Sp. Asst. U. S. Atty., Denver, Colo. (Joseph F. Dolan, U. S. Atty., Denver, Colo., on the brief), for plaintiff-appellee.
 Leonard E. Davies, Denver, Colo. (Davies & Saint-Veltri, Denver, Colo., on the brief), for Clarence Smaldone, Carol Jean Reeb, Anita D. Rowland, Larry Scott Owens and Edna Frances De Santis, defendants-appellants.
 Victor F. Crepeau, Denver, Colo., for John Henry Routa, defendant-appellant.
 F. James Voss, Denver, Colo., for Dominic La Rocco, defendant-appellant.
 Donald P. Hostetter, Denver, Colo., for Samuel Foderaro, defendant-appellant.
 Before McWILLIAMS, BREITENSTEIN and LOGAN, Circuit Judges.
 McWILLIAMS, Circuit Judge.
 
 
 1
 These eight appeals have heretofore been consolidated for the purposes of briefing, oral argument and final disposition. In each instance, the appellant seeks reversal of a judgment of conviction for violation of federal statutes relating to gambling. The indictment named twelve persons as defendants. Prior to trial, one defendant pled guilty. At trial, a second defendant, upon conclusion of the Government's case, was granted a directed verdict of not guilty. The jury acquitted two additional defendants, but convicted the other eight defendants upon one or more counts of a four count indictment. The eight defendants convicted by the jury now appeal.
 
 
 2
 Six appellants, namely, Clarence Smaldone, Carol Jean Reeb, Larry Owens, Anita Rowland, Edna Frances De Santis, and Samuel Foderaro, were convicted of conspiring to violate the federal statute relating to interstate travel or transportation in aid of racketeering enterprises. 18 U.S.C. §§ 371, 1952. The same six appellants and a seventh appellant, John Henry Routa, were convicted under a second count of conducting a gambling business in violation of 18 U.S.C. § 1955.
 
 
 3
 The eighth appellant, Dominic La Rocco, was convicted under a third count of using Satan's Lounge, located at 1961 Market Street, Denver, Colorado, which lounge La Rocco owned, in the conduct of a gambling activity and in the collection of gambling debts in violation of 18 U.S.C. §§ 1961, 1962(c), 1963. Under a fourth count, Carol Jean Reeb, who was convicted under counts 1 and 2, was also convicted of using Gaetano's Restaurant, located at 3670 Tejon Street, Denver, Colorado, where she was employed, in the conduct of gambling activity and in the collection of gambling debts in violation of 18 U.S.C. §§ 1961, 1962(c), 1963.
 
 
 4
 The Government's evidence tended to show that from July 1, 1975, to March 1, 1976, the eight appellants, and others, were engaged in a widespread bookmaking operation in the Denver, Colorado area, and also in the Pueblo, Colorado area. The illegal gambling business centered around bookmaking of certain sporting events, particularly college and professional football for the 1975 season. At trial, it was the basic position of all defendants that, though some of them may well have been violating state laws pertaining to gambling, there were no violations of federal laws.
 
 
 5
 We do not propose to set forth a summary of the Government's case. Trial of the case took several weeks and the record is long. The Government's evidence in the instant case as to the nature of the gambling business and its Modus operandi is strikingly parallel to the Government's evidence in United States v. Eugene Smaldone, 485 F.2d 1333 (10th Cir. 1973). A reading of our opinion in the Eugene Smaldone case will indicate, and quite clearly, the nature of the gambling business conducted by these appellants. Suffice it to say, the present record is replete with reference to such terms as runners, phone men, relay or pickup men, bookkeepers, managers, line information, point spread, vigorish, vig, juice, parlay card, lay-off and the like. Accordingly, we shall only refer to the evidence in the instant case as it becomes necessary to an understanding of the several matters urged here as grounds for reversal.
 
 1. Five-person requirement
 
 6
 Smaldone, Reeb, Rowland, Owens, De Santis and Foderaro urge as ground for reversal the instruction given the jury by the trial court concerning the essentials of 18 U.S.C. § 1955. In this regard, the trial court, in essence, instructed the jury that, in order to convict under § 1955, the jury must find that the gambling business involved five or more persons who "conduct, finance, manage, supervise, direct or own all or a part of such business." The word "conduct" was then defined as including all who participate in the operation of the gambling business, "regardless of how minor their jobs and whether or not they be labeled as agents, runners, or independent contractors," excepting the person who simply places a bet. The instruction given is in substantial accord with the statute. It is similar to the instruction given in United States v. Smaldone, 485 F.2d 1333 (10th Cir. 1973). The statute is intended to apply to all who participate except the bettor. United States v. Joseph, 519 F.2d 1068 (5th Cir. 1975); United States v. Jones, 491 F.2d 1382 (9th Cir. 1974); United States v. Sacco, 491 F.2d 995 (9th Cir. 1974); United States v. Becker, 461 F.2d 230 (2d Cir. 1972).
 
 
 7
 The defendants tendered certain instructions regarding lay-off bets, which the trial court declined to give the jury. We find no error in this regard. The evidence did not require the giving of this type of instruction. In short, the jury was adequately instructed as to the five-person requirement and as to the definition of the word "conduct."
 
 2. Wiretap evidence
 
 8
 Appellants Smaldone, Reeb, Rowland, Owens, De Santis and Foderaro argue that the trial court erred in denying their motion to suppress evidence acquired through the use of wiretaps on the telephones of certain of the defendants. The wiretaps in question were authorized by a state court. These appellants claim that the affidavit of Detective Foster was insufficient in that it did not sufficiently set forth the necessity for a wiretap and his inability to obtain the sought-after evidence by other investigative techniques. We have examined the affidavit in question and conclude that there was a sufficient showing that other investigative procedures would have been ineffective. United States v. Bobo, 477 F.2d 974 (4th Cir. 1973); People v. Milnes, 186 Colo. 409, 527 P.2d 1163 (1974). The affidavit explains, for example, why a surveillance would be ineffective and states that potential witnesses were uniformly unwilling to testify in court because of fear of reprisal. The affidavit, in our view, was sufficient.
 
 3. Cross-examination of Foderaro
 
 9
 Foderaro, as well as Smaldone, Reeb, Rowland, Owens and De Santis, complain about the cross-examination of Foderaro. On cross-examination, Foderaro was asked if he could explain telephone calls between the residence of his former wife and that of the defendant Smaldone. Objection was made and overruled, and Foderaro answered that he had no explanation since he was not living with his wife at the time in question. The matter was then dropped. In this Court, complaint is now made that the Government in the trial court never did establish that in fact there were telephone calls from the residence of Foderaro's former wife to the Smaldone residence. Any possible error in this regard, viewed in context, would be harmless error. This was a two-week trial. In such circumstance, it is difficult to conceive of how a single question and answer, or even several, would require a reversal. In any event, the scope and extent of cross-examination is within the discretion of the trial judge, and his ruling will not on appeal be ground for reversal unless clearly prejudicial.
 
 4. Refusal to identify informer
 
 10
 Smaldone, Reeb, Rowland, Owens and De Santis argue that the trial court erred in denying their motion for disclosure of a Government informant. A hearing was held on this motion, but a transcript of that proceeding does not appear to be included in the record on appeal. In such circumstance, we assume that the trial court's findings are supported by the evidence and that its conclusions are in accord with such cases as Rovaro v. United States, 353 U.S. 53 (1957); United States v. Martinez, 487 F.2d 973 (10th Cir. 1973).
 
 5. Rule 7(c)(2)
 
 11
 Reeb argues that count 4 of the indictment should have been dismissed for failure to comply with Fed.R.Crim.P. 7(c)(2).* That rule requires that when an offense is charged which may result in a criminal forfeiture, the indictment shall allege the extent of interest or property subject to forfeiture. The present indictment in count 4 sought the forfeiture of Reeb's interest in the business and property known as Gaetano's Restaurant, located at 3760 Tejon Street, Denver, Colorado. We deem such to be a compliance with Rule 7(c)(2). Accordingly, count 4 was not defective and was not subject to a motion to dismiss. United States v. Hall, 521 F.2d 406 (9th Cir. 1975) is inapposite since in that case there was no notice in the indictment that a criminal forfeiture was sought. The instant case is more akin to United States v. Bergdoll, 412 F.Supp. 1308, 1318-19 n. 17 (D. Del.1976).
 
 
 12
 6. Unavailability of the transcripts of three defense witnesses
 
 
 13
 Appellants Smaldone, Reeb, Rowland, Owens and De Santis contend that because the court reporter apparently lost her notes, and therefore could not transcribe the testimony of two defendants, Reeb and Owens, or the testimony of a defense witness, Pam Villano, an adequate appellate review is impossible, and that their respective convictions should for that reason be set aside. In this regard, when it became evident that the court reporter could not locate her notes containing the testimony of these three witnesses, the trial court invoked the provisions of Fed.R.App.P. 10(c). The defendants then prepared a so-called statement of the evidence, and, after hearing the Government's objections and amendments thereto, the trial court then approved a narrative statement of the testimony of Reeb, Owens and Pam Villano, and such is a part of the record now before us.
 
 
 14
 The testimony of Reeb, Owens and Pam Villano, as reconstructed, actually has little bearing on any of the other issues raised on appeal. The argument seems to be that simply because the court reporter lost her notes, a reversal is required. Such does not necessarily follow. Rule 10(c), Fed.R.App.P. clearly contemplates that there may be occasions where a transcript is, for one reason or another, unavailable and provides a method for reconstructing the missing record. In the instant case, the provisions of Rule 10(c) were complied with, to the end that the record before us does contain a narrative account of the testimony of all three witnesses. Nothing contained therein would necessitate a reversal. Although in a different factual context, the Supreme Court in Draper v. Washington, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963), has held that alternative methods of reporting trial proceedings are permissible if they place before the appellate court an equivalent report of the events at trial from which the appellant's contentions arise. In the instant case we have an "equivalent report." To the same effect, see Morgan v. Massey, 526 F.2d 347 (5th Cir. 1976).
 
 
 15
 7. Insufficient evidence to support the conviction of Foderaro
 
 
 16
 Foderaro contends that there is insufficient evidence to show that he violated either 18 U.S.C. § 1952 or § 1955. We disagree. Foderaro was making book on football games in Pueblo, Colorado. In connection therewith, he made repeated phone calls to Rowland's residence in Denver seeking to obtain from Rowland, or Reeb, up-to-date line information. Rowland and Reeb got their information from out-of-state. Accurate and up-to-date line information which establishes the "point spread" for the wagering was said to be vital to the success of the gambling operation. Without belaboring the matter, there is ample evidence to support Foderaro's convictions.
 
 
 17
 The appellant Routa, who was convicted under count 2 in the indictment, argues a number of grounds for reversal of his conviction which are applicable to his case only and have not been advanced here by the other appellants. None of these matters, however, has merit. For example, in our view the indictment sufficiently sets forth the location and time of the offense to the end that the indictment was not subject to a motion to dismiss. Additionally, we find no error in the trial court's denial of Routa's motion for a severance. In this regard, the trial court did not abuse its discretion. The record does not reveal the admission into evidence of any inadmissible evidence which would warrant the reversal of Routa's conviction. Viewing the evidence, both direct and circumstantial, in a light most favorable to the Government, the evidence in our view is sufficient to support the jury's verdict. United States v. Ortiz, 445 F.2d 1100 (10th Cir. 1971). Intercepted phone calls indicated that Routa got his line from appellant Rowland and that he used such information in connection with his parlay card operation. A search of Routa's store revealed incriminating and corroborative records. An expert witness called by the Government concluded that Routa was conducting a parlay card operation as an adjunct of the sports wagering business. The evidence against Routa is sufficient to support the jury's verdict.
 
 
 18
 Appellant La Rocco was acquitted under count 2, but convicted under count 3. On appeal, counsel in his brief argues that these verdicts were inconsistent and hence the guilty verdict under count 3 cannot be permitted to stand. Counsel concedes that he is unable to find any authority supporting such argument. Count 2 charged La Rocco with conducting an illegal gambling operation in which the other named defendants were involved. Count 3 charged La Rocco alone with using the Satan Lounge in conducting a gambling business through a pattern of racketeering and, in the alternative, with using his lounge in the collection of gambling debts. The jury was instructed that under count 3 it was not necessary for the Government to establish that the Satan Lounge was used Both in the conduct of the gambling operation And the collection of gambling debts. By its verdict, the jury has, in effect, determined that La Rocco did not use his lounge to conduct a gambling business through a pattern of racketeering, but that he did use the lounge in connection with the collection of gambling debts. In this latter regard, there was evidence that gambling debts were paid off to La Rocco at Satan's Lounge. The verdicts were not inconsistent.
 
 
 19
 The appellants raise other matters as grounds for reversal, such as the sufficiency of the indictment, improper instruction on "aiding and abetting," inadmissible evidence, and the like. We have examined these various other matters and find each to be without merit. None warrant any comment.
 
 
 20
 As indicated, this was a protracted trial. There were numerous charges, numerous defendants and numerous lawyers. It was a difficult case to be tried under "one roof." United States v. Heath, 580 F.2d 1011 (10th Cir. 1978). Nonetheless, the record is remarkably free of even harmless error, let alone prejudicial error. The several defendants have received a fair trial, and the judgments should be, and hereby are,
 
 
 21
 AFFIRMED.
 
 
 
 *
 Smaldone was also a defendant in count 4, but the jury acquitted him on that count