UNITED STATES of America, Plaintiff

v.

VARIOUS DENOMINATIONS OF CURRENCY AND COIN TOTALING $4,280.45, Assorted Checks and Money Order Totaling $1,136.76, One Power Ski Machine Serial Number 601115, and the One-Story Masonry Structure Known as the "Sportsman," Located at 217 Tenth Street, Dunbar, West Virginia, its Fixtures, Contents and Real Property Upon Which it is Situated, Defendants.

Civ. A. No. 80–2530.

United States District Court,
S.D. West Virginia,
Charleston Division.

Oct. 5, 1984.*

Mary S. Feinberg, Asst. U.S. Atty., Charleston, W.Va., for plaintiff.

Frederick D. Fahrenz, Preiser & Wilson, Charleston, W.Va., for defendants.

MEMORANDUM ORDER

COPENHAVER, District Judge.

This matter is before the court on the motion of Carl Junior Higginbotham, Julia Higginbotham and the Escape Restaurant Lounge, Inc., named as parties in interest in the complaint, to dismiss the complaint for forfeiture to the extent that it seeks forfeiture of real property.

I.

The government has sought to have the property forfeited pursuant to the provi-

---

* Although this opinion is over one year in age, the court has had several requests that it be published; hence, its submission at this time.

sions of 18 U.S.C. § 1955 (1976), which makes it a federal offense to engage in certain illegal gambling businesses.[1] Carl Junior Higginbotham, a party in interest, was convicted of a violation of § 1955 on March 14, 1980.[2] On December 14, 1980, plaintiff filed its complaint in forfeiture against certain currency and coins, assorted checks, a money order and a power ski machine which were seized from the premises of "The Sportsman" Tavern located at 217 Tenth Street, Dunbar, West Virginia, on or about June 3, 1978. A partial summary judgment in favor of the United States with respect to all of these items of personal property was granted by order of this court entered on December 16, 1982, following affirmance of defendant's conviction on appeal. The complaint in forfeiture also claimed that the Sportsman Tavern, a one-story masonry structure, the fixtures therein and the property on which it is situated, were subject to forfeiture because

they were used in the conduct of the illicit gambling business. 18 U.S.C. § 1955(d).

The issues before the court on this motion to dismiss are whether 18 U.S.C. § 1955(d) applies to real property and, if so, whether the real property of one not charged with a crime can be forfeited.

## II.

The bare language of the statute, "any property," appears unambiguous and, inasmuch as it is not limited in any way, may be read to include real as well as personal property. *See United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981). The parties in interest contend, however, that if Congress had intended to include real property within the scope of the statute, it would have made specific reference to such property. They also contend that inasmuch as forfeiture

---

1. Title 18, United States Code, Section 1955 provides that:

   § 1955. Prohibition of illegal gambling businesses

   (a) Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined not more than $20,000 or imprisoned not more than five years, or both.

   (b) As used in this section—

   (1) "illegal gambling business" means a gambling business which—

   (i) is a violation of the law of a State or political subdivision in which it is conducted;

   (ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and

   (iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

   (2) "gambling" includes but is not limited to pool-selling, bookmaking, maintaining slot machines, roulette wheels or dice tables, and conducting lotteries, policy, bolita or numbers games, or selling chances therein.

   (3) "State" means any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States.

   (c) If five or more persons conduct, finance, manage, supervise, direct, or own all or part of a gambling business and such business operates for two or more successive days, then, for the purpose of obtaining warrants for arrests, interceptions, and other

searches and seizures, probable cause that the business receives gross revenue in excess of $2,000 in any single day shall be deemed to have been established.

   (d) Any property, including money, used in violation of the provisions of this section may be seized and forfeited to the United States. All provisions of law relating to the seizure, summary, and judicial forfeiture procedures, and condemnation of vessels, vehicles, merchandise, and baggage for violation of the customs laws; the disposition of such vessels, vehicles, merchandise, and baggage or the proceeds from such sale; the remission or mitigation of such forfeitures; and the compromise of claims and the award of compensation to informers in respect of such forfeitures shall apply to seizures and forfeitures incurred or alleged to have been incurred under the provisions of this section, insofar as applicable and not inconsistent with such provisions. Such duties as are imposed upon the collector of customs or any other person in respect to the seizure and forfeiture of vessels, vehicles, merchandise, and baggage under the customs laws shall be performed with respect to seizures and forfeitures of property used or intended for use in violation of this section by such officers, agents, or other persons as may be designated for that purpose by the Attorney General.

2. This conviction was affirmed on appeal to the Fourth Circuit Court of Appeals. *United States v. Carl Junior Higginbotham*, 691 F.2d 498 (4th Cir., 1982) (unpublished).

proceedings under § 1955(d) are to be governed by the rules governing forfeiture under the customs laws which, in turn, involve only personal property, § 1955(d) should be similarly limited. As authority for these propositions, they cite *DiGiacomo v. United States*, 346 F.Supp. 1009 (D.Del.1972).

*DiGiacomo v. United States, supra,* and *United States v. Building and Property Known As 123–125 East Twelfth Street, Erie, Pennsylvania,* 527 F.Supp. 1167 (W.D.Pa.1981), which relies on *DiGiacomo,* are the only two reported cases of which the court is aware addressing the question of whether real property is forfeitable under § 1955(d). The analysis in *DiGiacomo* is not persuasive.

Section 1955 was part of the Organized Crime Control Act of 1970, Pub.L. 91–452, which also included provisions relating to Racketeer Influenced and Corrupt Organizations (RICO), 18 U.S.C. §§ 1961–1968. In 1970, Congress also enacted the Controlled Substance Act, Pub.L. 91–513, which includes provisions relating to Continuing Criminal Enterprises (CCE) involving five or more persons, 21 U.S.C. § 848. Both RICO and the CCE provide for forfeitures of property, 18 U.S.C. § 1963(a) and 21 U.S.C. § 848(a). Both of these provisions have been interpreted to include real property within the term "any ... property" even though the procedures provided for forfeiture utilize the customs laws and are thus no more suited for the forfeiture of real property than those provided under § 1955(d). 18 U.S.C. § 1963(c), 21 U.S.C. § 881(b), (c), (d).[3] *See United States v. Godoy,* 678 F.2d 84 (9th Cir.1982), *cert. denied,* 464 U.S. 959, 104 S.Ct. 390, 78 L.Ed.2d 334 (1983) (RICO; forfeiture of night club and commercial real estate);[4] *United States v. Tunnell,* 667 F.2d 1182 (5th Cir.1982) (RICO; forfeiture of motel); *United States v. Mannino,* 635 F.2d 110

(2nd Cir.1980) (CCE; forfeiture of personal residence); *United States v. Grammatikos,* 633 F.2d 1013 (2nd Cir.1980) (CCE; discotheque-motel); *United States v. Smaldone,* 583 F.2d 1129 (10th Cir.1978), *cert. denied,* 439 U.S. 1073, 99 S.Ct. 846, 59 L.Ed.2d 40 (1979) (forfeiture under RICO; violations of § 1955 also involved).

These cases undercut the approach of the *DiGiacomo* court that "if Congress had intended to include real property in the forfeiture provisions it could easily have said so." 346 F.Supp. at 1011. In enacting the Organized Crime Control Act of 1970, Congress set out to eradicate organized crime in the United States by, *inter alia,* "providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime." Pub.L. 91–452, § 1. To the extent that real property may be "used in violation of" § 1955, it is more logical to conclude, as did the court in *United States v. Godoy, supra,* in interpreting RICO § 1963, that if Congress did not want § 1955 to apply to particular kinds of property, it would have specifically excluded them. Moreover, there is reason to construe these two sections similarly inasmuch as racketeering activity as defined in RICO includes violations of § 1955(d). 18 U.S.C. § 1961(1)(B). *See United States v. Smaldone, supra.*

The parties in interest assert that forfeitures under RICO and CCE are *in personam* criminal penalties invoked following conviction whereas the forfeiture provided for in § 1955 is *in rem,* obtainable through a civil proceeding and thus distinguishable. The assertion is true, but the parties in interest have failed to mount a plausible argument as to why this distinction in itself should make a difference in how the term property is construed. The courts have found little significance generally in the fact that some forfeitures may be *in personam* while others may be *in rem. See*

---

**3.** 18 U.S.C. §§ 1955(a), 1963(c) and 21 U.S.C. § 881 all provide that the customs laws shall apply to forfeitures "insofar as applicable and not inconsistent with the provisions hereof."

**4.** In *Godoy,* a restraining order preventing disposition of the properties involved during litigation was entered under the authority of both 18 U.S.C. § 1955(d) and § 1963(b). *See* note 5, *infra.*

*United States v. United States Coin and Currency*, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971); *United States v. Grande*, 620 F.2d 1026 (4th Cir.1980). Moreover, the Supreme Court has held that statutes enacted "to suppress a public wrong," as was the Organized Crime Control Act of 1970, "although they impose penalties or forfeitures, [are] not to be construed, like penal laws generally, strictly in favor of the defendant; but are to be fairly and reasonably construed so as to carry out the intention of the legislature." *United States v. Stowell*, 133 U.S. 1, 12, 10 S.Ct. 244, 246, 33 L.Ed. 555 (1890). *See DiGiacomo v. United States*, 346 F.Supp. at 1011.

The court in *United States v. Building and Property Known As 123–125 East Twelfth Street, Erie, Pennsylvania* found the *DiGiacomo* opinion most compelling in its consideration of the rights of innocent third parties and the complications attendant on disposing of various interests in real estate as they reflect on Congressional intent with respect to forfeiture of real property under § 1955. These factors point up what may be a significant difference between § 1955 on the one hand and RICO and CCE on the other. What is forfeitable under the latter two statutes is the "interest in, security of, claim against, or property or contractual right(s) of any kind" of the person convicted. 18 U.S.C. § 1963(a); 21 U.S.C. § 848(a)(2). Thus, RICO and CCE do not reach the rights and interests of third parties in the property. Indeed, RICO provides that the United States is to make "due provision for the rights of innocent persons" in disposing of forfeited property. 18 U.S.C. § 1963(g).

Civil, *in rem* forfeitures, such as those provided for in § 1955, have, however, traditionally not taken the rights of third persons into account except to the extent that such persons can seek remission of a forfeiture in a separate proceeding. Thus, in *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974), the Court held that, under the Puerto Rican Controlled Substances Act, which provided for *in rem* forfeitures of conveyances used in violation of its provisions in a manner similar to 21 U.S.C. § 881, a yacht owned by a third party and allegedly used by the lessee for an unlawful purpose was forfeitable even though the lessor was neither involved in nor aware of the act of the lessee which resulted in forfeiture. *Calero-Toledo* distinguished the Puerto Rican statute from one involved in a prior case, *United States v. United States Coin and Currency*, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971), which the Court found to manifest a "clear intention to 'impose a penalty only upon those who [were] significantly involved in a commercial enterprise.'" 416 U.S. at 688, 94 S.Ct. at 2094, *quoting from United States Coin and Currency*, 401 U.S. at 721–22, 91 S.Ct. at 1044–45.

In *Calero-Toledo*, the Court noted the proliferation of forfeiture enactments which "reach virtually any type of property that might be used in the conduct of a criminal enterprise" and observed that "the innocence of the owner of property subject to forfeiture has almost uniformly been rejected as a defense." 416 U.S. at 683, 94 S.Ct. at 2092. In rejecting that defense in *Calero-Toledo*, the Court found that forfeiture prevented further illegal use of the property in question and, by imposition of an economic penalty, rendered "illegal behavior unprofitable." *Id.* at 687, 94 S.Ct. at 2094.[5] Additionally, the Court stated that:

> To the extent that such forfeiture provisions are applied to lessors, bailors, or secured creditors who are innocent of any wrongdoing, confiscation may have the desirable effect of inducing them to exercise greater care in transferring possession of their property.

*Id.* at 687–88, 94 S.Ct. at 2094. *Calero-Toledo* did, nevertheless, leave open the possi-

**5.** In a footnote, the Court observed that "seizure and forfeiture statutes also help compensate the Government for its enforcement efforts and provide methods for obtaining security for subsequently imposed penalties and fines." 416 U.S. at 687, n. 26, 94 S.Ct. at 2094, n. 26.

bility that, for constitutional reasons, forfeiture might not be proper where an owner could prove not only that he was uninvolved and unaware but also "that he had done all that reasonably could be expected to prevent the proscribed use of his property." *Id.* at 689, 94 S.Ct. at 2095. *See Goldsmith-Grant Co. v. United States,* 254 U.S. 505, 512, 41 S.Ct. 189, 191, 65 L.Ed. 376 (1921) (forfeiture of car under tax laws); *United States v. One 1957 Rockwell Aero Commander,* 671 F.2d 414 (10th Cir.1982) (forfeiture of aircraft under customs laws).

In *United States v. Stowell, supra,* the Court sustained forfeiture of the interest in real property of a non-innocent owner [6] who had allowed a distillery to be set up on the premises where the statute in question specifically provided for forfeiture in such event. The Court refused, however, to extend the reach of another section of the statute, also providing for the forfeiture of real property, to innocent owners even though the language of that section, literally construed, might have been so interpreted. The Court did not believe that Congress intended the result dictated by a literal construction, although it did read the personal property forfeiture provisions to extend to property owned by those lacking knowledge of or participation in the illegal activity. *See Dobbins's Distillery v. United States,* 6 Otto 395, 96 U.S. 395, 24 L.Ed. 637 (1877).

The holdings in these cases suggest alternate analyses of the statute at issue in this case. The most reasonable construction would appear to be one that deems the phrase "any property" as used in § 1955(d) to embrace real property while affording protection from forfeiture to innocent third parties. In this connection, it is noted that § 1955, unlike RICO [7] and the CCE,[8] does not *require* the forfeiture of property used in gambling. The language is: "Any property ... *may be* seized and forfeited." 18 U.S.C. § 1955(d). *Cf. Calero-Toledo v. Pearson Yacht Leasing Co., supra; United States v. One 1957 Rockwell Aero Commander, supra.* Accordingly, forfeiture of real property owned by or leased to third persons may be refused where the requirements for a *Calero-Toledo* exception are met. Additionally, it would appear appropriate to decline forfeiture where only a minor portion of the property was used for gambling, or the forfeiture, taking into account its effect on the interests of third persons, would effect a disproportionate penalty or fail to effect the purposes of forfeiture.

In this case, an affidavit filed by the parties in interest states that the real estate which encompasses "The Sportsman" Tavern and the land on which it sits is owned by the Escape Corporation,[9] 100% of whose stock is owned by Julia Higginbotham, the wife of Carl Junior Higginbotham. This relationship suggests that Julia Higginbothan and Escape Corporation may not meet the requirements of the *Calero-Toledo* exception or be entitled to the benefit of mitigating factors such as those just noted. The parties in interest, however, should have an opportunity to develop the record with respect to these factors.

### III.

Accordingly, it is ORDERED that the motion to dismiss of Carl Junior Higginbotham, Julia Higginbotham and the Escape Restaurant Lounge, Inc., be, and it hereby is, denied.

It is further ORDERED that a hearing to allow the parties in interest to show cause why "The Sportsman" Tavern, the fixtures therein and the property on which it is situate should not be forfeited shall be held.

---

**6.** In *Stowell,* the owner would be rendered non-innocent, in the terms of the statute, when he consented to the carrying on of a regulated business on the property, even though he personally committed no offense.

**7.** 18 U.S.C. § 1963(a).

**8.** 21 U.S.C. § 848(a)(2).

**9.** The record is unclear as to the proper name of this corporation or its relationship to the Escape Restaurant Lounge, Inc.