Fred D. BITLER, Peggy A. Bitler and Colorado Compensation Insurance Authority, political subdivision of the State of Colorado, Plaintiffs,

v.

A.O. SMITH CORP., a foreign corporation, White Rodgers, a subsidiary of Emerson Electric Co., a foreign corporation, and National Propane Corp., formerly, All Seasons Propane, a Colorado corporation, Defendants.

No. CIV.A.98–BB–1897–OES.

United States District Court, D. Colorado.

March 21, 2003.

Bruce A. Lampert, Richard Francis Schaden, Danial Alan Nelson, Schaden, Katzman, Lampert & McClune, Broomfield, CO, Stanley E. Karon, Karon Trial Law, PA, Edina, MN, for plaintiffs.

John M. Kobayashi, Kobayashi Law Firm, PC, Denver, CO, George W. Flynn, Flynn & Gaskins, L.L.P., Minneapolis, MN, Carla Lynn Baker, Mulliken, Gleason, Weiner & Whitney, PC, Colorado Springs, CO, Michele Renee Lamontagne, Lamontagne & Guinn, PC, Andrew M. Low, Davis Graham & Stubbs LLP, Denver, CO, Jerry B. Tompkins, Traylor, Arnold, Tompkins & Black, P.C., Grand Junction, CO, for defendants.

## ORDER

BOLAND, United States Magistrate Judge.

Defendant White Rodgers' **Motion to Supplement Record On Appeal Pursuant to Fed. R.App. P. 10(e)** (the "Motion to Supplement Record"), filed December 9, 2002, is GRANTED IN PART, as specified below.

### I.

Fred D. Bitler was badly burned when the propane gas water heater exploded in the basement of the house in which he was living. The case was tried to a jury for 11 days. On February 12, 2002, the jury returned a verdict in favor of the plaintiffs and against the defendants in excess of $2.3 million. Defendant National Propane settled the case just before the verdict was returned.

I entered judgment against defendant White Rodgers on March 25, 2002, in the amount of $1,386,850.95, plus post judgment interest. White Rodgers appealed the judgment asserting, I am told, numerous points of error. The asserted errors are not specified in the Motion to Supplement Record now before me or in the file of this Court.

In support of its Motion to Supplement Record, White Rodgers states:

> During the first five days of trial, an official [stenographic] court reporter was present during the proceedings. Those portions of the transcript appear to be accurate and without any material omissions. During the remaining six days of trial testimony, however, an official [stenographic] court reporter could not be present. The proceedings were recorded by audiotape and were then transcribed by an official court reporter from the audiotapes.
>
> The audiotape transcript contains hundreds of instances in which the proceedings were inaudible to the transcriber.

Indeed, on the very first page of audiotaped transcript, the transcriber notes that "[t]here appear to be no microphones turned on except the Judge's and the speakers are barely audible."

\* \* \* \* \* \*

> Sometimes the transcriber was unable to discern particular words. Often, however, the transcriber was unable to discern entire phrases or sentences. The transcriber's notation for a[n] "inaudible word" occurs infrequently, while the more general "inaudible" notation, which could signify the omission of several words, phrases, or whole sentences, occurs on virtually every other page of the audiotape transcript.

Motion to Supplement Record, ¶¶ 3–5 (internal citations omitted).

Present during the six days of the trial which were recorded by audiotape and not by an official stenographic court reporter were two private stenographic reporters hired and paid for by the defendants. *Id.* at ¶ 6. The Motion to Supplement Record correctly states that these privately retained stenographic reporters were present at the trial "[w]ith the permission of [the] Court, and without objection from Plaintiffs...." *Id.*

The issue of whether the official record of the proceedings would be recorded by audiotape or stenographically was discussed on several occasions prior to and during the trial. The matter came up initially early on the morning of January 28, 2002, which was the first day of the trial. While discussing who would be seated at counsel table, I instructed George Flynn, lead counsel for White Rodgers, to "go to the microphone." Record, 1/28/02, commencing at 8:50 a.m., p. 6, lines 12–17. A few minutes later, the following exchange occurred:

MR. FLYNN: (Pause) I might mention, Your Honor. We have retained a court reporter, who is here at the expense of the defendants, making a simultaneous record. If we could have a little—I just mention that if you—

THE COURT: Regrettably, I guess, the official record of the Court for purposes of appeal and otherwise is the tape recorded record, so you'll have to—and maybe you can switch places with Mr. Kyle so the coming and going [to the microphone at the podium] is easier. I don't know. But you will have to be at a microphone.

MR. LAMPERT:[1] (Soto voce) ...stipulate but I could stipulate to that being the official record.

MR. FLYNN: Counsel has just offered, he'll stipulate the traditional reporter could be the accepted record if the Court can accept that because then—the thing I don't like is we're tethered to this thing, and I really would prefer to move, and I got this exhibit and this picture and this thing back here. And it's just naturally I'm going to be inclined to go over here and say, "Do you see this, this valve we're going to use," show him this and have it here. And this thing is just like being tethered to it, and it's just—

MR. LAMPERT: Your Honor, I agree. And I don't know whether we can stipulate but, if we can, I'm married to a court reporter and I would state on the record I consider court reporters to be superior to tape recorders in all ways. I've had—I've had records that are tape recorded transcribed, and they are not as good, they're not as accurate and

they're not as flexible. So I strongly feel the court reporter is superior.

THE COURT: Well, I'm—I'll look into that point. I don't know whether we can stipulate or not. But the microphone will pick up some wanderings. So, mostly, you'll need to be near the microphone. If you're wandering to demonstrate to an exhibit or the like, I think that's fine. You just need to speak—if you speak loud enough for the jury to hear you, I think you'll speak loud enough for the microphone to pick it up, by and large. But for the purposes of this, where we're all here, let's make the best of it.

*Id.* at p. 9, line 6–p.10, line 21.

Later that day, I informed the parties as follows:

THE COURT: The parties had requested that a private stenographic court reporter be made the official record of the trial. I'm not inclined to do that. However, 28 United States Code Section 636(c)(5) provides that I may, subject to the guidelines of the Judicial Conference, determine whether the record be taken pursuant to electronic sound recordings, by a court reporter, or by other means.

We have obtained the services of a stenographic court reporter, one of the court's stenographic court reporters; and I have substituted him for the tape recording.

Record, 1/28/02, commencing at 12:29 p.m., p. 2, line 21–p.3, line 10.[2]

A stenographic record of the remainder of the proceedings on January 28, 2002, as well as all proceedings on January 29–31

---

1. This reference is to Bruce Lampert, lead plaintiffs' counsel.

2. Although section 636(c)(5) refers to "guidelines of the Judicial Conference" for determining the method of recording, formal guidelines have not been presented to the Conference for adoption.

and February 1, 2002, was made by Paul Zuckerman.

When the proceedings reconvened on Monday, February 4, 2002, Mr. Zuckerman was not available to make a stenographic record. I informed the parties of this fact, as follows:

> THE COURT: All right. We are without the services of Mr. Zuckerman. All of the court stenographic reporters are unavailable, so we will move back to the official record being the tape recorded record, although I note that we do have a stenographer here.
>
> It is important that you speak so that your voice is picked up by the microphones for the purposes of the official record. I will leave that up to you. It's your record to make, and I urge you to speak into a microphone.

3. In their briefs concerning the Motion to Supplement Record, both the plaintiffs and White Rodgers indicate that discussions concerning what would constitute the official record occurred "off the record." For example, the Plaintiffs' Response states:

> Apparently, Judge Boland's explanation to the attorneys as to why the privately retained report[ers] would not make the official record occurred off of the record.

Plaintiffs' Response, p. 2 at n. 1. Similarly, White Rodgers states in its Reply:

> Plaintiffs also contend that at some point during trial, White Rodgers orally moved for a ruling that the privately-retained court reporter be the official reporter for purposes of the trial, and that this Court denied that motion. There is nothing in the record or the civil docket for this case to support Plaintiffs' contention, nor does trial counsel for White Rodgers remember having made such a motion.

Reply, p. 2. Finally, White Rodgers states in its Supplemental Brief:

> The Court acknowledged the parties' offer to stipulate, and indicated that the point required further consideration.... Apparently, however, the issue was never revisited.

Supplemental Brief, p. 2.

Record, 2/4/02, commencing at 8:07 a.m., p. 819, lines 14–22.[3]

In view of the asserted inadequacies of the transcription of the audiotapes, White Rodgers seeks an order imposing a blanket substitution of the transcript prepared by the unofficial stenographers as the official record.

## II.

White Rodgers invokes Rule 10(e) of the Federal Rules of Appellate Procedure for the supplementation of the record. That rule provides, in relevant part:

> (1) If any difference arises about whether the record truly discloses what occurred in the district court, the difference must be submitted to and settled by that court and the record conformed accordingly.

In fact, virtually nothing in this case was done off the record. Prior to briefing the point, the parties failed to order those parts of the record necessary to be fully informed of the events. I subsequently directed the parties to order certain portions of the record. Thereafter, I ordered additional portions which the parties had not obtained.

From my review of the record, it appears that White Rodgers informed me of the presence of the private stenographic reporters on the morning of January 28, 2002, and shortly thereafter the parties offered to stipulate to substitute the private reporters for the audiotaped record. I took the matter under advisement. Early in the afternoon of January 28, I informed the parties that I would not accept the proposed stipulation. However, I also informed the parties that I had obtained the services of one of the court's stenographic reporters, Paul Zuckerman. Mr. Zuckerman reported the proceedings for the remainder of the week of January 28, 2002. Neither Mr. Zuckerman nor any other of the court's stenographic reporters were available for the proceedings on February 4, 2002, or thereafter, and I informed the parties on the morning of February 4 that "we will move back to the official record being the tape recorded record...."

(2) If anything material to either party is omitted from or misstated in the record by error or accident, the omission or misstatement may be corrected and a supplemental record may be certified and forwarded:

(A) on stipulation of the parties;

(B) by the district court before or after the record has been forwarded; or

(C) by the court of appeals.

Fed. R.App. P. 10(e).

In addition, Fed. R.App. P. 10(c) provides:

If the transcript of a hearing or trial is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection. The statement must be served on the appellee, who may serve objections or proposed amendments within 10 days after being served. The statement and any objections or proposed amendments must then be submitted to the district court for settlement and approval. As settled and approved, the statement must be included by the district clerk in the record on appeal.

▌ The trial court has the ultimate responsibility for assuring the existence of an accurate transcript of the proceedings before it. *United States v. Perkins,* 498 F.2d 1054, 1058 (D.C.Cir.1974). The lack of a complete transcript of a trial may in some instances call the fairness of the trial proceedings into question so as to require reversal and a new trial. *Black v. O'Haver,* 567 F.2d 361, 371 (10th Cir.1977); *see United States v. La Spesa,* 956 F.2d 1027, 1034–35 (11th Cir.1992); *Cockrham v. South Central Bell Telephone Co.,* 695 F.2d 143, 145 (5th Cir.1983).

▌ An imperfect or incomplete transcript of proceedings does not automatically require reversal, however. *United States v. Smaldone,* 583 F.2d 1129, 1133–34 (10th Cir.1978). As the court noted in *Smaldone:*

The argument seems to be that simply because the court reporter lost her notes, a reversal is required. Such does not necessarily follow. Rule 10(c), Fed. R.App. P., clearly contemplates that there may be occasions where a transcript is, for one reason or another, unavailable and provides a method for reconstructing the missing record.

*Id.* at 1134. Before reversal is appropriate, a party complaining about the imperfect transcript must show that it in fact has been prejudiced by the omission. *Black,* 567 F.2d at 371. Where an equivalent, substitute record can be produced, no such prejudice will be found to exist. *Id.*

The *Smaldone* case is illustrative. There, the court reporter lost her notes and could not provide a transcript of the testimony of certain witnesses. The trial court invoked Fed. R.App. P. 10(c), and the defendants prepared a "so-called statement of the evidence." 583 F.2d at 1133. After considering the government's objections to the defendants' proposed statement of evidence, the district court approved a narrative of the testimony and made it a part of the record on appeal. The Tenth Circuit Court of Appeals approved the procedure and found that reversal and retrial was not necessary, stating:

"[A]lternative methods of reporting trial proceedings are permissible if they place before the appellate court an equivalent report of events at trial from which the appellant's contentions arise. In the instant case we have an 'equivalent report.'"

*Id.* at 1133–34.

Similarly, in *Bergerco, U.S.A. v. Shipping Corp. of India Ltd.,* 896 F.2d 1210 (9th Cir.1990), the court articulated a three part test to determine whether remand for

a new trial is necessary due to an inadequate record:

> These cases suggest that in civil, as in criminal cases, the lack of a complete transcript does not automatically warrant reversal. However, in certain circumstances, the original transcript may be so essential to meaningful appellate review that a remand for a new trial is necessary to insure a fair appeal. Based on our reading of the ... cases, we have identified several factors which are relevant in determining whether a new trial is warranted in a given case. We conclude that an appellant seeking a new trial because of a missing or incomplete transcript must 1) make a specific allegation of error; 2) show that the defect in the record materially affects the ability of the appeals court to review the alleged error; and 3) show that a Rule 10(c) proceeding has failed or would fail to produce an adequate substitute for the evidence. We believe these factors would be presented only in rare circumstances.

*Id.* at 1217.

### III.

 In this case, so far as I am aware, White Rodgers does not seek reversal and retrial based on the state of the record. Instead, White Rodgers merely requests that the record be supplemented so as to provide a report of the events at trial sufficient to allow meaningful appellate review of the errors it alleges. Motion to Supplement Record, at p. 5 ("Supplementing the record will permit the Tenth Circuit to consult a more complete and accurate transcript to fill in the many gaps in the official transcript. If the parties were forced to use only the existing transcript of the last six days of trial testimony, on the other hand, their rights to due process of law could be seriously impaired. The record necessary to support key arguments on appeal—for either affirmance or rever-

sal—could be inaccurate or missing entirely, thereby preventing a party from making an otherwise meritorious argument").

The plaintiffs resist White Rodgers' request to supplement the record, arguing not that the official record as it currently exists is adequate but that the privately retained stenographers were not official reporters sworn to faithfully perform the duties of their office. Plaintiffs' 1/27/03 Response, at p. 2 (citing 28 U.S.C. § 753). However, techniques far less reliable than the verbatim transcription proposed as a supplement here, prepared and sworn to be accurate by the privately retained stenographers, have been approved in this circuit and others as acceptable means for preparing an "equivalent report." *Smaldone,* 583 F.2d at 1133–34 (approving as an equivalent report a narrative statement of testimony reconstructed from the parties' and the court's notes and recollections); *accord United States v. LaSpesa,* 956 F.2d at 1035 (approving as an equivalent report a record reconstructed by defense counsel, prosecutors, and court reporters); *A.D. Herring v. Kennedy–Herring Hardware Co.,* 261 F.2d 202, 203 (6th Cir.1958)(stating that "[a] satisfactory record, including a narrative statement of the testimony of the witnesses, may at times be prepared through the use of notes taken during the trial by the attorneys and trial judge, supplemented by memories of the attorneys, witnesses, and the trial judge, by agreement between the parties, and possibly from other sources").

Review of the unofficial transcript prepared by the private stenographic reporters and approval of it as an equivalent report, as requested here by White Rodgers, would be an enormous undertaking, however. The edited and certified transcript prepared by the private stenographic reporters, and tendered to the Clerk of the Court on February 21 and 24, 2003,

includes more than 1,950 pages of testimony and other recorded proceedings. I am not prepared to perform that task without a showing of necessity by White Rodgers.

I anticipate that much of the unofficial transcript of proceedings has no bearing whatsoever on matters asserted on appeal by White Rodgers. As to those parts of the record, there appears to be no need for my review and approval of a reconstructed record under Rule 10(c). *Williams v. Barnhart,* 289 F.3d 556 (8th Cir.2002)("Absent an indication that the missing portion of the transcript would bolster appellant's arguments or prevent judicial review, this Court will not remand a case based on inaudible portions of the record").

Where, however, the official transcript is alleged to be incomplete with respect to matters relevant to the determination of White Rodgers' appeal, it is appropriate that White Rodgers be given the opportunity to attempt to demonstrate the inadequacy of the official record and to reconstruct an adequate record through the use of the unofficial transcript of proceedings. *See United States v. LaSpesa,* 956 F.2d at 1035 (noting that because the effort to reconstruct the record was adequate, "the missing transcripts did not hamper appellants' ability to pursue an effective appeal").

IV.

IT IS ORDERED that the Motion to Supplement Record is GRANTED to the following extent:

(1) Within 20 days of the date of this order White Rodgers shall specify those errors which it asserts on appeal and which it alleges are affected by the state of the official record. White Rodgers shall identify with specificity the portions of the official record relevant to the identified errors and state with particularity why the official record is insufficient. White Rodgers also shall identify with particularity the portions of the unofficial transcript of proceedings with which it seeks to supplement the official record.

(2) Within ten days thereafter, the plaintiffs shall file any objections they have to the proposed supplement to the record, identifying with particularity any inaccuracies which they allege exist in the unofficial transcript of proceedings proposed as a supplement. The plaintiffs also shall submit any supplement to the record which they assert may be necessary.

(3) Thereafter, I will review relevant portions of the record, approve any necessary supplementation to the record, and direct the Clerk of the Court to include any approved supplements in the record on appeal.

IT IS FURTHER ORDERED that the Motion to Supplement Record is DENIED in all other respects.