Stan W. **BEARPAW**, Appellant (Defendant),

v.

The **STATE** of Wyoming, Appellee (Plaintiff).

No. 89–214.

Supreme Court of Wyoming.

Dec. 7, 1990.

Rehearing Denied Dec. 19, 1990.

Leonard D. Munker, State Public Defender and Mike Cornia, Appellate Counsel, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Karen A. Byrne and Roger C. Fransen, Sr. Asst. Attys. Gen., for appellee.

Before CARDINE, C.J.,* and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

URBIGKIT, Chief Justice.

This appeal from a second degree murder conviction presents basic questions of an inadequate record, ineffectiveness of trial counsel, and fundamental concerns about the fairness of the trial. We reverse and remand for retrial.

## I. ISSUES

Appellant initially contends:
ISSUE 1

Whether the trial court erred in instructing the jury that they could infer malice from the use of a deadly weapon and that one of the elements of man-

slaughter was killing without malice, expressed or implied.
ISSUE 2

Whether the trial court's instructions concerning second degree murder and manslaughter impermissibly shifted the burden to the Appellant to prove that the killing was without malice and reckless.
ISSUE 3

Whether there was insufficient evidence for the jury to find the Appellant guilty of second degree murder.

Appellee's initial issues are:
I. Was the evidence sufficient to support the jury's verdict of guilt of second degree murder?
II. Did the trial court correctly respond to questions asked by the jury during their deliberations?
III. Did the trial court err in instructing the jury that malice may be inferred from the use of a deadly weapon?
IV. Did the trial court err in not instructing the jury on the appellant's defense of accident?
V. Was it reversible error to instruct the jury that absence of malice is an element of the lesser included offense of manslaughter?

An incomplete record of the trial was presented for appellate review and supplemental briefing was requested. Appellant's further issues then address:
I. Should the failure of counsel to designate the entire record have any effect on this appeal?
II. Whether the State's inability to provide the entire record is grounds for reversal.
III. Did the Appellant receive effective assistance of counsel?

Appellee then asks:
I. Does the failure of defense counsel to designate the entire transcript of the trial court proceedings for inclusion in the record on appeal and the subsequent unavailability of the transcript of voir dire, opening statements and closing arguments necessitate reversal of Appellant's conviction?

* Chief Justice at time of oral argument.

II. Did Appellant have effective assistance of counsel at trial?

We reverse the conviction and remand for retrial on the basis of the inadequate record presented for a determination by this court of whether a fair trial existed and whether effective assistance of counsel was provided.

## II. PLEADING AND PROCEDURAL HISTORY

On March 2, 1989, Stan W. Bearpaw (Bearpaw) shot and killed Rita Bownes (Bownes). The two lived together and Bownes was the mother of their two month old son.[1] Following a day of drinking alcohol, Bearpaw shot Bownes in the right eye with a .22 single action revolver from a distance of two to six feet. The shooting occurred just outside the Wind River Indian Reservation on non-Indian land.

On the day of the death, events followed a rather aimless visiting around and drinking pattern, including consumption of "purple passion" at an acquaintance's house, before returning to the rented residence in Hudson, Wyoming in the late afternoon, early evening period. After they arrived home, the two adults started arguing and the only evidence of what happened is found in the disorganized and confused statement given by Bearpaw at the sheriff's office later that night in Lander, Wyoming. That statement is somewhat in conflict with Bearpaw's version as provided to the parole officer for preparation of a presentence investigation report, but essentially the same general scenario develops.

Bownes was folding clothes and Bearpaw was apparently watching while they engaged in an argument. For whatever reason, Bearpaw got a .22 single action revolver out of the bureau and shot Bownes in the right eye with a single shot from a distance of two to six feet. Bearpaw then held Bownes for a time and then, leaving her on the floor, took the baby and walked out of the house. There were no other persons present at any time during the events.

Since no phone existed in the home, Bearpaw, after walking to an adjoining residence, called the sheriff's office and was thereafter taken to Lander where a late night interrogation commenced.[2] A rambling, inconsistent explanation followed during the early-morning-hour extended interview, which was recorded and transcribed. This interview was then introduced without objection into evidence as a trial exhibit.

Bearpaw was held in jail and a complaint of second degree murder (purposely and maliciously, but without premeditation), W.S. 6-2-104, was filed on March 6, 1989 in the Fremont County Court. An appearance bond of $10,000 was established but never posted. A public defender was appointed for representation. Following a preliminary hearing, Bearpaw was bound over for trial and the information was filed in the district court on April 20, 1989. Arraignment followed on May 3, 1989 when Bearpaw pled not guilty. A pre-trial date of June 21, 1989 and trial date for July 17, 1989 were set by the Fremont County resident district court judge.

In compliance with a pre-trial order, the State filed a comprehensive list of witnesses and exhibits. No filings or motions of any kind were made in behalf of Bearpaw to support or sustain his defense phased in

1. Stan W. Bearpaw, age thirty-two, an Oklahoma Cherokee Indian, was born in Los Angeles, California. He had four children by a previous relationship and had lived with the victim for about two years. A baby son was born from their association. A couple of years before the date of this occurrence, he had followed his mother to the Wind River Shoshoni/Arapahoe Indian Reservation in central Wyoming where an older sister lived.

2. Bearpaw did not testify at trial and whatever is demonstrable from the present evidence, consisting essentially of the record of his rambling explanation during that night to the sheriff's officers, there is no other evidence except inference from result of firearm firing and shooting death to establish intent to commit a homicide or to do any serious physical harm to his two-month old son's mother. The statement recorded by the officers lends credence to the possibility that he really did not know himself what, why or how it happened.

avoidance of the intentional homicide criminal charge.

The pre-trial conference was conducted by the resident district court judge and the case assigned for trial to the other district court judge for the Ninth Judicial District, resident 160 miles away at Jackson, Wyoming in Teton County. The defense at the pre-trial conference, enunciated by defense counsel, was lack of purposefulness in commission. The district court judge inquired:

All right. We have a second degree murder charge. What is the nature of the defense here?

[DEFENSE COUNSEL]: Well, the basic nature is that I don't believe that the State can prove second degree. It can maybe prove manslaughter, but—

THE COURT: So you're putting the State to their proof on the charge?

[DEFENSE COUNSEL]: Yes.

THE COURT: Why don't you think— you think one of the elements of second degree is missing here apparently. I suppose it's maliciously or purposely.

[DEFENSE COUNSEL]: The purposely more than anything.

The county attorney responded when the district court asked:

What does the State contend happened here?

[COUNTY ATTORNEY]: Well, basically that the defendant and the deceased were arguing, and that he pulled his pistol out of a drawer there in the dining area, cocked it and shot her between the eyes.

THE COURT: This occurred over in Hudson as I recall.

[COUNTY ATTORNEY]: That's correct.

THE COURT: These people weren't married, though, but they were living together?

[COUNTY ATTORNEY]: That's correct.

THE COURT: All right. And had been living in Hudson for some time?

[COUNTY ATTORNEY]: Yes.

THE COURT: Was there alcohol involved?

[COUNTY ATTORNEY]: At some point in the evening, the defendant was drinking. I don't know when for sure.

As to witnesses, the district court asked:

THE COURT: The State has filed a list of witnesses and exhibits. Have you got such a list prepared, [defense counsel]?

[DEFENSE COUNSEL]: I thought that I filed—oh. No, I didn't file one because the only other witness besides the witnesses that they have that I might possibly call would be my client, at least at this time. Our investigator was working on the case and then she took off for two weeks and so she hasn't got back with me with a final report yet. But I don't anticipate that we will need more witnesses than this, because for instance, they have my client's sister and her husband listed, and they would be two of our primary witnesses, but the State's already listed them. So we have no other witnesses other than what's already been listed by the State.

As the session concluded, the district court asked:

Mr. Bearpaw, do you have any questions?

THE DEFENDANT: If I have any questions later, I can talk to [Defense counsel].

THE COURT: Okay. That's always the best advice is to talk to your attorney.

The next entry in the record, except for an order of district court judge reassignment and Bearpaw's two proposed instructions, is a letter from Bearpaw addressed to the initial district court judge. The letter, dated July 6, 1989, fifteen days after the pre-trial conference and eleven days before trial, stated:

I Stan Bearpaw do not want to go to trial with [Defense Counsel] as my lawyer[.] I do not believe he will even try to prove my innocence. I've been in jail 126 days and maybe talked to him 20 min. in all that time. He either has a soccer game to go to or when he said he would come by he never would. I have nothing against this man but I don't believe he

will with all his ability try to prove my innocence. You asked me in court at the arraignment if he was sati[s]factory I said yes cause [sic] I thought he might change but he still leaves me in the dark. I myself know what happened was a auful [sic] accident and I don't feel [Defense Counsel] will try his best in court. This is my life and my future at stake and I don't want to take any unnessary [sic] chances. I would like to have another laywer [sic]. I have met Donna Sears from Sear Law Offices and, would like to request her to take over my case.

Sincerely

/s/ Stan W. Bearpaw

Seven days later and four days before trial, a further letter to the district court judge was written:[3]

3. The subject of these letters regarding sufficiency of counsel came up on the second day of trial:

THE COURT: Okay. On the record. We're in chambers out of the presence of the jury. Both counsel and the defendant are present. There [are] two issues that need to be addressed. The first thing is the issue of what we were going to do with the statements that Mr. Bearpaw has made to the investigators in this case. And where we stand at the moment is that the 45 page transcript of the tape recorded interview has been admitted into evidence.

[Defense Counsel], I understand that you would like the entire 45 page transcript read to the jury at this point.

[DEFENSE COUNSEL]: That's correct, Your Honor.

THE COURT: And [County Attorney] would rather ask questions of the investigator from the transcript in an order which you choose.

[COUNTY ATTORNEY]: That's correct.

THE COURT: I've reflected on this for a bit and I think that if I'm going to error I'm going to error on the side of [Defense Counsel] out of an abundance of caution, so at this point I want to have it read in its entirety to the jury.

Who should read it? [Defense Counsel], who do you want to read it or, [County Attorney], what's your position?

[COUNTY ATTORNEY]: I suppose that I could read the part of Investigator Coppock and he could read the part of the defendant.

THE COURT: Is that satisfactory with you, [Defense counsel]?

[DEFENSE COUNSEL]: That's fine, Your Honor.

THE COURT: Okay. And then, [County Attorney], after that I think you would be permitted to ask your questions of the investigator as to what the defendant's demeanor was with regard to any particular part of it. It may take a while to get through this, but I think out of an abundance of caution that's the way I want to proceed. So that takes care of the first issue.

The second issue, Mr. Bearpaw, I was recently assigned this case and I got the case file in my office in Jackson last week. And then when I came here yesterday I saw a letter in the file. They placed it in the file after I brought it back here; you had written to Judge Kail, and I don't remember the date of the letter. The case file's in the courtroom. But you said in the letter, in essence, that you didn't want to be represented by [Defense Counsel] and that you wanted to be represented by another lady, I guess her name was Dean, or something of that nature.

[DEFENSE COUNSEL]: Donna Sears.

THE COURT: Sears. Okay. And then I had spoken with [Defense Counsel] and [County Attorney] on the phone last week, and [Defense Counsel] indicated to me he didn't think there were any problems with his representing you in this matter and I thought that was laid to rest. And then this morning when we came in from the recess there's a letter dated July 13, 1989, apparently in your handwriting and your signature addressed to Judge Kail saying that you wanted to put off your trial until a later date. What's your position with regard to these matters now?

MR. BEARPAW: On that, me and [Defense Counsel] discussed that already, and it was just that I didn't really get to speak with him, you know. I didn't, you know, know enough to really know who he was to represent me.

And on the—as far as the delay and the trial, you know, I didn't get to see no evidence or anything or discuss witnesses for a while. I didn't really care, you know, my own outcome. But for my son, you know, I thought I would fight this the best way you can. This is all new to me, so I just needed time to get to know [Defense Counsel] and see exactly where we stand on this because I didn't know too much.

THE COURT: Okay. Well, we're almost a full day into the trial now and [Defense Counsel]'s representing you. The law on that is—

MR. BEARPAW: I have no problem with [Defense Counsel] representing me.

THE COURT: Okay. So you're satisfied with his representation?

MR. BEARPAW: Yes.

THE COURT: And at this point being into the trial now it would be very difficult to delay it or something. We're going over the evidence very carefully. Are you satisfied with that set up?

MR. BEARPAW: Yes. It was just that I was afraid. This whole trial and everything is, you know, nothing I've been through before.

THE COURT: Yes.

MR. BEARPAW: I just don't want to take no chances with my future.

Today is the first time my lawyer [Defense Counsel] has talked to me in detail about my defence [sic] and about witnesses for my defence [sic], I went over statements and evidence. I don't feel going over evidence and just now getting to see my lawyer about my case and trying to get witnesses three days before trial is enough time. I ask the court to put off my trial for a later date so we can notify my witnesses[ ] and they will have time to get to Wy.

I have not talked to my lawyer long enough to know if I want him to represent me at my trial. This is the second of 2 letters I have written you. Have not had an answer to the first.

Sincerely

/s/ Stan W. Bearpaw

No motions for defensive purposes had been filed, including either a motion to suppress or a motion for change of venue.

The trial convened on July 17, 1989 at 1:30 p.m. The jury was impaneled (proceedings not transcribed) and voir dire completed (proceedings not transcribed), followed by the testimony of the first two witnesses during the afternoon before the trial recessed at 5:10 p.m. The State completed its testimony by four additional witnesses during the next day. In chambers, Bearpaw advised the district court that he elected not to testify and the defense then presented no evidence in his behalf of any kind, including character witnesses or psychiatric review. Preparation of instructions was completed that afternoon (not reported) and the next morning, the jury was instructed (not transcribed) and closing argument made (not transcribed).[4]

The only interruption in the expeditious progress of the proceeding was a request of the jury to have the forty-five page interview, which was the sole evidence of the occurrence, available for their perusal during deliberation. This request was denied. Two additional questions regarding the relationship of manslaughter and murder were presented at 4:00 p.m. with the guilty verdict then announced at 5:00 p.m. A sentence of twenty to thirty years followed after a presentence investigation report was prepared.

The record then reflects a Notice of Appeal filed August 24, 1989, which stated:

COMES NOW Defendant and hereby gives his Notice Of Appeal to that Judgment And Sentence entered by the [District Court] on the 16th day of August, 1989, and filed on the 18th day of August, 1989. This Appeal is taken to the Wyoming Supreme Court.

Concurrently herewith Defendant has ordered a transcript from * * *, Court Reporter and has filed a Motion to Proceed In Forma Pauperis pursuant to Rule 10.06 W.R.A.P.

A Motion for Leave to Proceed on Appeal in Forma Pauperis was also filed and stated:

COMES NOW the above-named Defendant, by and through his appointed counsel, and respectfully moves this Court for leave to proceed in forma pauperis. The Defendant seeks leave to proceed in forma pauperis as to all costs and fees of the appeal, including attorney's fees, court costs, and costs of the record and transcript on appeal.

A designation of the record pursuant to W.R.A.P. 4.02 was not made by trial counsel for Bearpaw. Following receipt of the "record for appeal" *consisting of one volume* in the clerk's office of this court, appellate counsel for the office of the public defender filed a motion entitled Motion

---

THE COURT: Okay. So you've talked with [Defense Counsel] then about proceeding with the trial?
MR. BEARPAW: Yes.
THE COURT: And you're satisfied we can go ahead and proceed with the trial?
MR. BEARPAW: Yes, sir.
THE COURT: All right. Either counsel want to say anything for the record at this time?

[DEFENSE COUNSEL]: No, Your Honor.
[COUNTY ATTORNEY]: No, Your Honor.

4. This court's admonition in *Valdez v. State*, 727 P.2d 277, 279 (Wyo.1986) that "the waiver of a court reporter in any portion of the criminal trial is, at best, procedurally risky," had gone unheeded.

to Supplement Record and Stay Running of Time for Filing of Brief, which stated:

COMES NOW, the Appellant, by and through his counsel and respectfully moves this court for an order allowing supplementation of the record and staying the running of time for filing of Appellant's brief until said transcript is filed.

In support of said motion, counsel for Appellant respectfully states:

1. On October 7, 1989 [sic (mailed 29 September, 1989)], counsel received notification of the filing of the record in the case of *Bearpaw v. State*, No. 89–214.

2. On October 4, 1989, counsel picked up the record.

3. A subsequent examination of the record revealed that Mr. Bearpaw was convicted of second degree murder after a jury trial.

4. Further examination revealed that the record contained no transcript of the trial proceedings but rather contained only a transcript of an in chambers hearing concerning jury questions to the trial judge.

5. Given the severity of the charge; the facts that Appellant was sentenced to 20 to 30 years in prison and the preclusive effect of failing to raise an issue on appeal, counsel for * * * Appellant feels that it is absolutely essential that a transcript of the proceedings be reviewed prior to preparation of the brief.

WHEREFORE, counsel for Appellant respectfully requests that this court issue an order allowing supplementation of the record; setting a deadline for filing of the transcripts of November 17, 1989; and staying the running of the 30 days for filing of Appellant's brief until such time as the supplemental material is filed.

This court entered an order of October 18, 1989 granting the motion to supplement the record and stay the running of time for filing the brief which stated:

The above captioned matter coming before the court upon the appellant's Motion to Supplement Record and Stay Running of Time for Filing of Brief and the court finding sufficient cause, it is therefore

ORDERED that the record on appeal of this case be supplemented by the inclusion of the transcripts of all trial court proceedings and so supplemented and certified by November 17, 1989, pursuant to Rule 4.04, W.R.A.P.; and, it is further

ORDERED that the time in which the appellant's brief is scheduled to be filed is hereby extended to thirty (30) days after the record is supplemented and certified and filed with this court.

It was then determined in communication between this court and counsel that the text of the interview had not been reported and was available only as an exhibit—then unlocated; that extensive off-the-record exchanges had occurred; and that the voir dire, opening statements and closing arguments had been reported but not transcribed. Initially, other trial evidence had not been transcribed, but was subsequently transcribed after an order from this court. A supplemental filing was made which included that transcript and a deposit of exhibits which had not been delivered. After having been discovered, the interview text, Exhibit 19, was filed on January 23, 1990.

On January 8, 1990, Bearpaw's counsel renewed his motion to supplement:

COMES NOW, the Appellant, Stan W. Bearpaw, through his counsel and respectfully moves this Court for an Order to allow supplementation of the record with the following materials: 1) A transcript of voir dire; 2) a transcript of opening and closing statements; 3) all exhibits, including but not limited to a) a transcript of the in-custody interview with the Appellant which was read to the jury but not recorded b) a copy of the written statement signed by Appellant.

In support of said motion counsel for Appellant respectfully states:

1. The Appellant stands convicted of second degree murder.

2. As originally received, the only transcript of the trial proceedings consisted of a five (5) page transcript of an in-camera hearing concerning jury questions.

3. Counsel filed a Motion requesting that this record be supplemented with a transcript of all trial proceedings.

4. On October 17, 1989, this Court ordered that: "the record on appeal of this case be supplemented by the inclusion of the transcripts of all trial court proceedings." * * *

5. Although vior [sic] dire and opening and closing statements were recorded, these proceedings were not transcribed "pursuant to direction of counsel." * * *

6. At trial a transcript of an in-custody statement was read to the jury but was not recorded.

7. A written statement of the Appellant was offered as an exhibit.

8. The exhibits in this case were not received by the Clerk of the Wyoming Supreme Court.

9. There is no designation of the record in the record.

10. There were no witnesses other than the Appellant to the alleged homicide.

11. Based on counsel's reading of the record as it now exists it appears that the inclusion of the rest of the trial court proceedings is necessary to a just determination of this case.

WHEREFORE, counsel for Appellant respectfully requests that this Court order that transcripts of vior [sic] dire and opening and closing statements be prepared by January 23, 1990 and that these transcripts and all exhibits in the case be supplemented to the record.

FURTHER, counsel respectfully requests that Appellant's brief be due seven (7) days after the supplemented material is certified and field [sic] with this Court.

The transcript stated:

AFTERNOON SESSION, MONDAY, JULY 17, 1989

THE COURT: Good afternoon, ladies and gentlemen.

(Veniremen, having been summoned, were sworn, interrogated, and a jury of twelve was duly impaneled and sworn. The voir dire was reported and is not

herein transcribed, pursuant to direction of ordering counsel.)

(Whereupon, the Court read the preliminary instruction to the jury.)

(Whereupon, opening statements of counsel for the State and Defendant were made and reported but are not herein transcribed, pursuant to direction of ordering counsel.)

THE COURT: You may call your first witness.

\* \* \* \* \* \*

(Whereupon, the Court read the jury charge to the jury.)

(Whereupon, [County Attorney] gave a closing argument on behalf of the State, which was reported, but not here transcribed pursuant to direction of ordering counsel.)

(Whereupon, [Defense Counsel] gave a closing argument on behalf of the defendant, which was reported, but not here transcribed pursuant to direction of ordering counsel.)

(Whereupon, [County Attorney] gave a closing rebuttal argument on behalf of the State, which was reported, but not here transcribed pursuant to direction of ordering counsel.)

Nothing was filed of record which supported a designation of less than the complete record. It was also determined that the tape which had been taken during the trial had been erased and that a transcript of impaneling, voir dire, opening statements and closing arguments could not be obtained since the basic source of material had been destroyed by the court reporter following whatever exchange had occurred between himself and trial counsel about the requested transcript.

Following receipt of original briefs, this appeal was reassigned from the Supreme Court expedited docket to the oral argument docket with a request for additional briefing stating:

This case was assigned to the expedited docket and came on regularly before the court; and the court having reviewed the briefs, record and files, finds that the parties should provide additional briefs

upon the effect of failure to designate the entire record, inability now to supply the entire record, and whether appellant had effective assistance of counsel; the court further finds that this case should be reassigned to the argument docket; wherefore, it is hereby

ORDERED that appellant, on or before 20 days from the date of this order, and appellee, within 15 days thereafter, shall file their additional briefs presenting their positions upon the effect of failure to designate the entire record, inability now to present the entire record in this case, and whether appellant had effective assistance of trial counsel; it is

FURTHER ORDERED that this case is reassigned to the argument docket for hearing after briefing is complete.[5]

As a result of supplemental briefing, a broad collection of ineffectiveness and procedural issues were created, including the quandary whether recreation of the record pursuant to W.R.A.P. 4.03 [6] might be satisfactory at that time. The difficulty with any mutually agreed settlement of the record would involve self-justification by the trial counsel who initially failed to file an adequate designation of the record.

Items of concern within the historical facts of this homicide from the standpoint of defense for which present review is not possible could include general criminal trial issues of unintended occurrence and intoxication among others.

### III. DISCUSSION OF INADEQUATE RECORD

This court cannot rationally analyze the merits of any potential defense within the concepts of adequacy of representation without a comprehensive record. We conclude that at least some of the questions do require resolution before we can determine that a fair trial was held. Because we cannot make that determination, this case is remanded for retrial.

The controlling Wyoming decision requiring a retrial where a complete and adequate transcript is not available is *Richardson v. State*, 15 Wyo. 465, 89 P. 1027 (1907). The facts of *Richardson* have a remarkable similarity except for its death penalty homicide conviction. In that case, the court reporter lost some of his notes and could not provide a complete record upon which an adequate bill of exception, then constituting the Wyoming appellate process, could be prepared. *See Harris v. State*, 790 S.W.2d 568 (Tex.Cr.App.1989).

Although sufficiency of the evidence was a significant issue, also in contention without record for review was "alleged error in overruling the defendant's challenge of one of the jurors for cause." *Richardson*, 89 P. at 1034–35.

In its early years, this court determined "[t]here is no more reason for permitting a party to be deprived of his legal rights through a failure or a refusal of the official stenographer to perform his duties than through the failure or refusal of the judge or any other officer of the court to perform a duty imposed by law." *Id.* at 1030. The court recognized an absolute right of appeal in a criminal case and the corollary right to be provided a complete record. Otherwise, the court noted, the defendant is effectively deprived of the right of appeal. *Richardson* held that a new trial is

---

**5.** At the time of the supplemental briefing request, this court adopted an amendment to W.R. A.P. 4.01, which states in part:

Transcripts in criminal cases shall consist of all proceedings held in open court including but not limited to voir dire, opening statements and final arguments, conferences with the presiding judge in open court and in the court chambers, in addition to the testimony of the case and other required materials.

**6.** W.R.A.P. 4.03 states:

If no report of the evidence or proceedings at a hearing or trial was made, or if a tran-

script is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including his recollection. The statement shall be served on the appellee, who may serve objections or propose amendments thereto within ten (10) days after service. Thereupon the statement and any objections or proposed amendments shall be submitted to the district court for settlement and approval and as settled and approved shall be included by the clerk of the district court in the record on appeal.

required when a necessary record is absent.[7]

The rule of *Richardson* regarding irreplaceable and missing record was followed in *State v. Thomas*, 38 Wyo. 72, 264 P. 1017 (1928), when the trial court determined that an exchange during trial directed by the trial court not to be reported, and was not reported to which exception was immediately taken, constituted reversible error. *Richardson* was quoted as controlling precedent with approval in granting a new trial:

> The grave point before us on this assignment of error is that we are asked to review that part of a record which the defendant, through no fault of his own or his counsel, was prevented by the action of the trial court from making. It would seem that the appellate jurisdiction of this court is affected.

*Thomas*, 264 P. at 1020.

No more recent cases are available in this jurisdiction which may serve to limit the *Richardson* rule. Comparable authorities from other jurisdiction are supporting and illustrative of the continued national vitality of the *Richardson* principle. The necessity of a complete record for appeal including voir dire was mostly recently recognized by the Texas Court of Criminal Appeals in the capital murder case of *Hernandez v. State*, 785 S.W.2d 825 (Tex.Cr. App.1990). That court said "[v]iolations of [the] mandatory language [of the Texas Rules of Appeal] are not subject to a harmless error analysis." *Id.* at 826–27. See, likewise, the rule that a mandatory requirement for the court reporter to record all proceedings in a criminal case establishes a principle which cannot be overridden by any local practice, *United States v. Brumley*, 560 F.2d 1268 (5th Cir.1977). That court, in quoting *United States v. Selva*, 559 F.2d 1303, 1306 (5th Cir.1977), emphasized that " '[w]hen ... a criminal defendant is represented on appeal by counsel other than the attorney at trial, the ab-

sence of a substantial and significant portion ... of the record' will result in a presumption of prejudice sufficient to mandate reversal * * *." *Brumley*, 560 F.2d at 1281.

The Oklahoma courts are in agreement:

> The Court therefore finds that due to the illness of said court reporter, it is impossible for him to complete the record of evidence in the District Court; and it is therefore impossible for defendant to provide this Court with the record and testimony in this case; and that counsel asserts by affidavit that it is impossible for him to provide such testimony from memory.
>
> We have repeatedly held that where a timely request for a record has been made and through no fault of the defendant the record cannot be prepared or certified by the court reporter a new trial will be granted.

*Colwell v. State*, 477 P.2d 398, 399 (Okl.Cr. 1969). *Accord Cole v. United States*, 478 A.2d 277 (D.C.App.1984); *Emerson v. State*, 664 S.W.2d 787 (Tex.App.1984); and *People v. Adkins*, 461 N.W.2d 366 (Mich. 1990). Here, if explanation is directed to the action of the counsel for Bearpaw, an ineffectiveness of counsel constitutional rights violation is created. *Frias v. State*, 722 P.2d 135 (Wyo.1986); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Reversed and remanded for retrial.

THOMAS, J., concurred in the result only.

CARDINE, J., specially concurred and dissented in part.

CARDINE, Justice, specially concurring and dissenting in part.

Since this case came here on appeal, our rules have been amended to specifically require the transcripts in criminal cases to consist of all proceedings. W.R.A.P. 4.01

---

7. Sole blame in this case is not assessed against the court reporter since he probably did act upon undocumented instructions. Participants in the state court criminal proceedings should never forget that separate review in the federal court system is always possible and, if there is an incomplete record, it would likely turn out to be, at the very least, embarrassing to the entire state judicial system.

was amended effective July 10, 1990, to include this paragraph:

"Transcripts in criminal cases shall consist of all proceedings held in open court including but not limited to voir dire, opening statements and final arguments, conferences with the presiding judge in open court and in the court chambers, in addition to the testimony of the case and other required materials."

Before this amendment the reporting of voir dire, opening statements and final argument was upon request of counsel and not required as part of the record on appeal. These were reported here but deliberately not ordered by Bearpaw's trial counsel when filing his notice of appeal. The court reporter, upon being advised these portions of the trial were not required for appeal, destroyed them. After the destruction, Bearpaw's appellate counsel asked for their inclusion in the record.

Although I foresee that this case may ultimately be remanded, the majority is premature in now reversing and ordering a new trial. In arriving at this result, the court ignores the correct procedure which requires the parties to recreate the record pursuant to W.R.A.P. 4.03. The refusal of this court to again abide by its own rules is found in the following sentence:

"The difficulty with any mutually agreed settlement of the record [is that it] would involve self-justification by the trial counsel who initially failed to file an adequate designation of the record." Maj. opin. at 15–16.

Besides lacking any basis for this statement, I cannot comprehend why any "self-justification by the trial counsel" would necessarily make recreation of the record a problem. First, it is probable that the trial counsel concluded that error did not occur in the voir dire, opening statement or final argument portions of the trial. Second, the record can only be settled by agreement of the prosecuting attorney, defense attorney, and the court. Although settlement of the record may be difficult, it is not impossible. Most in the legal profession, whether fresh out of law school or weathered from years of practice, are thick-skinned enough to prevent criticism from impeding them in performing a court-mandated responsibility. An opportunity to settle the record should have been afforded counsel in this case.

A closer reading of the case upon which the court relies to require a new trial at this time reveals error now being made. In *Richardson v. State*, 15 Wyo. 465, 485, 89 P. 1027, 1034 (1907), we said:

"Incidental to the power to compel a correct record to be sent up, or a bill of exceptions to be settled, is the power, as it seems to us, of ordering a new trial of the cause, *where it is made to appear that the only record in the cause has been destroyed without the possibility of substitution * * *."* (emphasis added)

This statement embraces the very purpose of W.R.A.P. 4.03. A statement of the evidence and the proceedings approved by the parties and court in the manner dictated by the rule can be an "adequate substitute[ ], equally as good as a transcript." *Draper v. Washington*, 372 U.S. 487, 495, 83 S.Ct. 774, 779, 9 L.Ed.2d 899 (1963).

Furthermore, we have considered cases involving incomplete transcripts subsequent to *Richardson* with differing results. In *State v. Riggle*, 76 Wyo. 1, 298 P.2d 349 (1956), *cert. denied* 352 U.S. 981, 77 S.Ct. 384, 1 L.Ed.2d 366 (1957), the appellant, facing capital punishment, challenged his conviction, *inter alia*, on grounds that the court reporter had not attended the proceedings after the case was sent to the jury. This court found no error because it was not necessary for a reporter to be in attendance after the parties rest. 298 P.2d at 370.

Although *Riggle* is arguably distinguishable in that appellant's counsel acquiesced in the reporter's absence, a more contemporary case details the consequences of not attempting to reconstruct the record. In *Petersen v. State*, 594 P.2d 978 (Wyo.1979), appellant's trial for driving while under the influence was recorded electronically using cassette tapes. While preparing to appeal his conviction, it was discovered that one of the cassette tapes was defective and unusa-

ble. This court held that while the rule which preceded W.R.A.P. 4.03 was permissive, failure to use the procedure may adversely affect the appeal. *Id.* at 980. We then said that when a defendant makes no attempt to settle a record, we will not consider an issue that could be raised had the defendant done so. *Id.*

In Bearpaw's case, this court ignores the purpose of W.R.A.P. 4.03 in granting Bearpaw a new trial without having to identify what potential error occurred during voir dire, opening statement or argument and then attempting settlement of the record. If an attempt to settle the record were unsuccessful, then Bearpaw should have to show that the missing portion of the record is "substantial and critical" before a new trial would be ordered. *United States v. Pilling,* 721 F.2d 286, 296 (10th Cir.1983). *See also United States v. Smaldone,* 583 F.2d 1129, 1133–34 (10th Cir.1978), *cert. denied* 439 U.S. 1073, 99 S.Ct. 846, 59 L.Ed.2d 40 (1979).

I would require that the parties first proceed as outlined above.