Oscar Rodriguez MARQUEZ,
Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 96–95.

Supreme Court of Wyoming.

June 19, 1997.

Sylvia Lee Hackl, State Public Defender; Donna D. Domonkos, Appellate Counsel; Deborah Cornia, Assistant Appellate Counsel; and Deborah Ford Mincer, Special Assistant Appellate Counsel, for Appellant.

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Georgia L. Tibbetts, Senior Assistant Attorney General, for Appellee.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

MACY, Justice.

Appellant Oscar Rodriguez Marquez appeals from the judgment and sentence which the trial court entered after the jury found that he was guilty of one count of first-degree sexual assault and one count of aggravated assault and battery.

We affirm.

## ISSUES

Appellant presents five issues for our analysis:

I. Whether the record is inadequate because the record of the Defendant's testimony is not preserved and, therefore, the case must be remanded for a new trial?

II. Whether the trial court erred in the jury charge on "reasonable doubt" and, therefore, the judgment must be reversed?

III. Whether trial counsel rendered ineffective assistance of counsel and, therefore, the judgment must be reversed?

IV. Whether the trial judge erred in failing to follow Wyo. Stat. 1–11–209, Further Information After Jury's Retirement, and, therefore, the judgment should be reversed?

V. Whether cumulative error in this case mandates reversal?

## FACTS

The victim met Appellant, whom she knew as "Francisco," in the early part of June 1993. They saw each other several times during the ensuing weeks. On or about July 14, 1993, the victim and Appellant went for a drive out to the Flaming Gorge area. When they returned to Rock Springs, Appellant invited the victim to attend a party at his home. The victim declined his invitation.

The next day, Appellant rode his bicycle to the victim's trailer. When the victim asked Appellant to leave her trailer, he got angry, and a physical altercation followed. Appellant forced the victim down the hallway and into her bedroom. He pushed her down onto the bed, and he straddled her. He then removed her clothing and sexually assaulted her. Afterwards, the victim went to the bathroom where she cleaned herself up. She again asked Appellant to leave, but he refused and thwarted her attempts to leave as well. Eventually, however, the victim was able to escape from the trailer.

As the victim approached her car, Appellant grabbed her and tried to take her back into the trailer. At that point, the victim's neighbor drove up, and Appellant went inside the trailer. After some time had passed, the victim returned to the trailer and discovered that Appellant had left through the back door.

The victim went to a local bar to get a drink and calm down. While she was there, she told a friend about the encounter, but she did not disclose that she had been sexually assaulted. A short time later, Appellant entered the bar and said a few words to the victim. The victim remained at the bar, had three or four drinks, and then went home. Upon arriving at her trailer, the victim went to bed. She was awakened by Appellant who was sitting on the edge of her bed with a

knife in his hand. After the victim's attempts to escape failed, Appellant made numerous scratches on her neck and breasts with the knife. The victim was eventually able to summon the police, and, once the police arrived, Appellant ran out of the trailer through the back door. The victim initially told the police that a Hispanic male named Francisco, who was subsequently identified as Appellant, had assaulted her with a knife. Later at the police station, she revealed that Appellant had also sexually assaulted her. Appellant was charged with one count of first-degree sexual assault and one count of aggravated assault and battery.

At the trial, Appellant acknowledged that he was with the victim at the time in question, but he denied the charges against him. He claimed that he and the victim were in a relationship and that they had consensual sex while they were at the Flaming Gorge. He explained that the victim was bruised during a scuffle they had over her intention to drive while she was intoxicated. He also said that the victim could have been bruised while he was attempting to stop her from cutting herself with his knife.

After three days of trial, the jury found Appellant guilty on both counts. The trial court sentenced Appellant to serve concurrent imprisonment terms at the Wyoming State Penitentiary of not less than fifteen years nor more than twenty years on the first-degree sexual assault conviction and not less than eight years nor more than ten years on the aggravated assault and battery conviction. Appellant appeals to this Court.

## DISCUSSION

### A. Whether the Record Was Adequate

■ In his first claim of error, Appellant asserts that this case must be remanded for a new trial because his testimony was not transcribed in Spanish. He maintains that this failure rendered the record incomplete and that, according to our holding in *Bearpaw v. State*, 803 P.2d 70, 78 (Wyo.1990), he was denied his right of appeal. The State counters that *Bearpaw* does not hold that an absence of a portion of the trial transcript from the record is reversible error *per se.*

The State also contends that *Bearpaw* does not hold that a non-English speaking defendant is entitled to have a verbatim recording made of his testimony in his native language.

Appellant bases his argument upon his allegation that the interpreter somehow failed to accurately translate the substance of his testimony. Other than one instance in which the defense counsel questioned the interpreter's pronunciation of the victim's name and the fact that the interpreter began each translation with the words "[h]e said," Appellant has neither identified any inaccuracies in the translation nor explained how he was prejudiced by the alleged inaccuracies. Instead, Appellant merely argues reversible error under *Bearpaw* on the ground that a transcription of his testimony in Spanish is absent from the record.

Appellant's reliance upon *Bearpaw* is misplaced. In that case, we reversed the appellant's conviction because, due to the absence of the transcripts of the jury selection, the opening statements, the reading from a transcript of an in-custody interview, the instruction conference, and the closing arguments, we were unable to ascertain whether the appellant had received effective assistance of counsel or a fair trial. 803 P.2d at 78–79. In the case at bar, however, the record contains a transcript of the proceedings from *voir dire* through sentencing. The record is sufficiently complete to permit Appellant to allege multiple errors and for us to intelligently review those allegations. We, therefore, cannot hold that Appellant was effectively denied his right of appeal.

### B. Whether It Was Error to Give Instruction

Appellant contends that the trial court erred by giving a deficient reasonable doubt jury instruction and that such error is reversible *per se.* The State replies that the instruction in question was not a reasonable doubt instruction but was an instruction on the presumption of innocence which is afforded to all defendants in criminal trials.

■ We give the trial courts wide latitude in instructing the jury, and we "will not find reversible error in the jury instructions

as long as the instructions correctly state the law and the entire set of instructions sufficiently covers the issues which were presented at the trial." *Harris v. State*, 933 P.2d 1114, 1126 (Wyo.1997). A jury instruction will not be found to be defective absent a showing that the instruction confused or misled the jury about the proper principles of law. *Yung v. State*, 906 P.2d 1028, 1035 (Wyo.1995). "Instructions must be considered as a whole, and individual instructions, or parts of them, should not be singled out and considered in isolation." *Collins v. State*, 854 P.2d 688, 700 (Wyo.1993). Appellant did not object to the instruction which was given; therefore, in order to prevail on appeal, he must demonstrate that the trial court committed plain error in instructing the jury.

The instruction at issue read:

The Information in this case is only a formal charge and is not to be considered any evidence of guilt on the part of the [d]efendant. Nothing is to be taken by implication against him; the law raises no presumption against him. Every presumption of law is in favor of his innocence, and in order to convict him of the crime charged against him, every fact necessary to constitute such crime must be proved by the State, to your satisfaction and beyond a reasonable doubt; and if you entertain a reasonable doubt upon any single fact or element necessary to constitute the crime, it is your duty to give the defendant the benefit of such doubt and find him not guilty.

Appellant's problem with the instruction lies with the words "to your satisfaction." He maintains that this language allowed the jury to use a lesser standard of proof to convict him than what due process mandates. Appellant erroneously categorizes this instruction as a reasonable doubt instruction. As the State points out, it is an instruction on the presumption of innocence.

Appellant apparently reads the instruction as permitting a guilty verdict if either the jury was satisfied with the State's evidence or proof beyond a reasonable doubt existed. The instruction, however, clearly informed the jury that, in order to convict Appellant, it had to find, to its "satisfaction *and* beyond a reasonable doubt," that the State proved every fact which was necessary to constitute the crimes charged. (Emphasis added.) The instruction, without explaining what "beyond a reasonable doubt" meant, required the jury to find that each fact or element which constituted the charged crimes had been proven beyond a reasonable doubt. It did not inform the jurors that they could convict Appellant solely on the basis of their satisfaction that the evidence justified a guilty verdict and thereby lessen the standard of proof which was necessary for a determination of guilt. The instruction adequately conveyed the proper principles of law pertaining to the correct standard of proof.

■ Appellant suggests that we should overrule *Collins*, 854 P.2d 688, and direct trial courts to give instructions which define reasonable doubt. We refuse to follow Appellant's suggestion because we continue to believe that the phrase is self-explanatory and that an attempt to define it would only tend to confuse a jury. 854 P.2d at 699.

## C. Whether Counsel Was Ineffective

Appellant claims that he was denied his constitutional right to have effective assistance of counsel at his trial. He maintains that his counsel's performance was deficient in nine different areas and that, when they are viewed together, these errors establish a total absence of the adversarial process and require a reversal.

■ In order to prevail on his claim of ineffective assistance of counsel, Appellant must make the dual showings that his counsel's performance was defective and that the deficient performance prejudiced his defense. *Rigler v. State*, No. 96–113, 941 P.2d 734 (Wyo.1997). We have reviewed the relevant portions of the record and conclude that Appellant's attorney's performance was not unconstitutionally defective. Since we are satisfied that Appellant's defense was not compromised as a result of his attorney's performance, we will not undertake the tedious and unavailing task of addressing each

of Appellant's points of error with respect to the effectiveness of his counsel.

### D. Whether Jury Could Review Court Transcripts

■ Appellant disapproves of the way that the trial court handled the jury's request to review the court transcripts. The trial court responded to the jury's request by stating that the jurors had to rely on their collective memories and that the transcript would not be ready for several days. Appellant argues that, by refusing to allow the jury to review the trial transcripts, the trial court committed reversible error *per se*.

■ WYO.STAT. § 1–11–209 (1988) provides:

After the jurors have retired for deliberation, if there is a disagreement between them as to any part of the testimony, or if they desire to be informed as to any part of the law arising in the case, they may request the officer to conduct them to the court where information upon the matter of law shall be given. The court may give its recollection as to the testimony on the points in dispute, in the presence of or after notice to the parties or their counsel.

The trial judge's decision on whether to give his recollection as to a part of the testimony is discretionary and will be a ground for reversal only in cases "where it is clear that an injustice [was] done." *Hoskins v. State*, 552 P.2d 342, 349 (Wyo.1976), *cert. denied*, 430 U.S. 956, 97 S.Ct. 1602, 51 L.Ed.2d 806 (1977).

■ Section 1–11–209 does not require a trial court to refresh the jurors' memories. *Id.* Nor does our decision in *Chambers v. State*, 726 P.2d 1269 (Wyo.1986), as Appellant asserts, require a trial court to determine the reason for a request prior to denying the request. Rather, in that case, we merely held that a trial court could permit a jury to review portions of the evidence if the strict requirements of § 1–11–209 were satisfied. 726 P.2d at 1275–76; *see also Stephens v. State*, 774 P.2d 60, 70 (Wyo.1989).

The jurors did not indicate that they were having a disagreement, and Appellant does not give us any insight about a possible dispute. The trial court was not required to provide the transcript simply because the jury wanted to review all the testimony; therefore, it did not abuse its discretion in refusing to allow a total review of the court transcripts.

### E. Whether There Was Cumulative Error

Appellant claims that, when they are viewed as a whole, the errors in this case mandate a reversal. He also complains that the admission of testimony concerning his status as an illegal alien and his use of a false social security number constitutes reversible error. We have frequently said: " 'When no error has occurred, a claim of cumulative error cannot be recognized.' " *Hodges v. State*, 904 P.2d 334, 342 (Wyo.1995) (quoting *Vargas–Rocha v. State*, 891 P.2d 763, 771 (Wyo.1995)). *See also Springfield v. State*, 860 P.2d 435, 453 (Wyo.1993).

■ Appellant failed to object at the trial to the testimony about his illegal alien status and his use of a false social security number. Even had he properly objected, allowing the colloquy for purposes of impeachment would have been within the trial court's discretion since the testimony was probative of Appellant's character for truthfulness. W.R.E. 608(b). Appellant has not directed us to any legal authority which would persuade us otherwise. Since Appellant has not established error in the various issues that he raises in this appeal, his claim of cumulative error must fail.

### CONCLUSION

We hold that the trial court did not commit reversible error and that Appellant's trial counsel did not perform ineffectively.

Affirmed.