Pablo LUCERO, Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 99–101.

Supreme Court of Wyoming.

Dec. 22, 2000.

Representing Appellant: Sylvia L. Hackl, State Public Defender; Donna D. Domonkos, Appellate Counsel; Ryan R. Roden, Assistant Appellate Counsel; and Jason McLaren, Student Extern.

Representing Appellee: Gay Woodhouse, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and T. Alan Elrod, Assistant Attorney General.

Before LEHMAN, C.J., and THOMAS, GOLDEN, HILL, and KITE, JJ.

THOMAS, Justice.

The novel issue presented by Pablo Lucero (Lucero) in this case arises out of the failure, due to an electronic error in the court reporter's Stenograph machine, to preserve the jury instruction conference as part of the record. Lucero contends that the loss of the transcript of the jury instruction conference precludes judicial review of his claim that the district court erred by failing to instruct the jury on the statutory definition of the phrase "serious bodily injury." As additional issues, Lucero claims that the failure to instruct on the statutory definition of "serious bodily injury" is reversible error, that the State did

not prove one of the elements of the charged offense, aggravated assault and battery in violation of Wyo.Stat.Ann. § 6–2–502(a)(ii) (Lexis 1999),[1] by sufficient evidence, and that the prosecutor committed misconduct by implying the existence of facts that were not established for the jury. None of the asserted errors provide any justification for reversal, and we affirm the Judgment and Sentence entered in the district court.

Lucero's appellate brief includes this statement of the issues:

*ISSUE I*

Whether the lack of a complete record mandates that appellant[']s conviction should be reversed?

*ISSUE II*

Whether the trial court erred when it failed to instruct the jury on the statutory definition of an essential element of the criminal offense for which appellant was charged?

*ISSUE III*

Whether the appellant's conviction can stand when the State failed to prove an essential element of the crime?

*ISSUE IV*

Whether prosecutorial misconduct occurred when the prosecutor implied knowledge that was not available to the jury?

The State presents this statement of the issues:

I. Is the record in Appellant's case entirely sufficient to prove the district court did not err in failing to instruct the jury on the definition of "serious bodily injury"?

II. Was the evidence presented in Appellant's case sufficient to support a conviction for aggravated assault and battery?

III. Was there prosecutorial misconduct in Appellant's case and did the district court abuse its discretion?

On March 21, 1998, at the end of his workday, Lucero returned to the apartment he shared with a roommate in Cheyenne.

---

1. In pertinent part, Wyo.Stat.Ann. § 6–2–502(a)(ii) provides:

(a) A person is guilty of aggravated assault and battery if he:

* * *

(ii) Attempts to cause, or intentionally or knowingly causes bodily injury to another with a deadly weapon[.]

When he arrived he found that his roommate was entertaining several guests, who were drinking and playing dominoes. Lucero was unhappy with the impromptu party, and quarreled with his roommate. When the victim attempted to intervene in the quarrel to diffuse the situation, Lucero struck him with his fists, knocking him to the floor. Lucero was wearing his steel-toed work boots, and he then kicked the victim in the head and chest before leaving the apartment.

The victim was taken to the hospital where it was determined that his jaw and nose were broken. In addition, the victim lost all of his upper teeth, and required two hours of surgery to repair the bone that had once supported them.

Lucero was charged with aggravated assault and battery, and he pled not guilty. At trial, which commenced on August 10, 1998, he was convicted of the charged offense. Lucero appeals the Judgment and Sentence of the district court.

Relying upon our decision in *Bearpaw v. State*, 803 P.2d 70 (Wyo.1990), Lucero asserts that we must reverse his conviction and order a new trial because the transcript of the jury instruction conference is not available. He asserts that we cannot effectively review his claim that error was committed in instructing the jury because he cannot support by the record his offer of an instruction on the statutory definition of "serious bodily injury." It is clear that no such instruction was given. In *Bearpaw*, we held that without transcripts of opening statements, jury voir dire and selection, the reading from a transcript of an in-custody interview, the instruction conference, and closing arguments, we could not review a claim of ineffective assistance of counsel. *Id.* at 78. We incorporated in our ruling language from the United States Court of Appeals for the Fifth Circuit:

See, likewise, the rule that a mandatory requirement for the court reporter to record all proceedings in a criminal case establishes a principle which cannot be overridden by any local practice, *United States v. Brumley*, 560 F.2d 1268 (5th Cir.1977). That court, in quoting *United States v. Selva*, 559 F.2d 1303, 1306 (5th Cir.1977),

emphasized that " '[w]hen ... a criminal defendant is represented on appeal by counsel other than the attorney at trial, *the absence of a substantial and significant portion ... of the record*' will result in a presumption of prejudice sufficient to mandate reversal * * *." *Brumley*, 560 F.2d at 1281.

*Bearpaw*, 803 P.2d at 79 (emphasis added).

■ This case is distinguishable from *Bearpaw* because the lack of the missing transcript does not frustrate our review of Lucero's claim of error in failing to instruct the jury on the statutory definition of "serious bodily injury." *See Candelaria v. State*, 895 P.2d 434, 438 (Wyo.1995). We assume, arguendo, that Lucero properly proffered the instruction he claims was necessary, and lodged a timely objection to its refusal, but we discern no error on the part of the district court. Because the missing transcript, whatever its contents, could not demonstrate that the refusal to give Lucero's proposed instruction was error, the absence of a transcript is no impediment to judicial review. The transcript, therefore, is not " 'a substantial and significant portion ... of the record,' " and its unavailability does not mandate reversal and a new trial. *Bearpaw*, 803 P.2d at 79 (*quoting United States v. Brumley*, 560 F.2d 1268, 1281 (5th Cir.1977)).

■ Lucero contends that the district court erred by failing to instruct the jury on the statutory definition of the phrase "serious bodily injury." Our standard of review for claimed errors in instructing the jury is:

We afford significant deference to the trial court in instructing the jury:

"[T]he trial judge is afforded latitude to tailor the instructions to the facts of the case, and reversible error will not be found as long as the instructions when viewed as a whole and in the context of the entire trial fairly and adequately cover the issues."

*Scadden v. State*, 732 P.2d 1036, 1053 (Wyo.1987), *followed in Seymour v. State*, 949 P.2d 881, 883 (Wyo.1997).

*Streitmatter v. State*, 981 P.2d 921, 925 (Wyo. 1999).

The district court instructed the jury that it should not convict Lucero unless it found that he caused bodily injury to the victim with a deadly weapon. The district court provided these statutory definitions[2] of the elements of the offense:

"Deadly weapon" means but is not limited to a firearm, explosive or incendiary material, motorized vehicle, an animal or other device, instrument, material or substance, which in the manner it is used or is intended to be used is reasonably capable of producing death or serious bodily injury.

"Bodily injury" means physical pain, illness or any impairment of physical condition.

Lucero claims that he offered an instruction on the definition of "serious bodily injury" which the district court refused. Although no such instruction is included in the refused instructions in the record, we will assume that one was presented and refused. The language Lucero claims was necessary also comes directly from the statute:

"Serious bodily injury" means bodily injury which creates a substantial risk of death or which causes miscarriage, severe disfigurement or protracted loss or impairment of the function of any bodily member or organ[.]

Wyo.Stat.Ann. § 6–1–104(a)(x) (Michie 1997).

Jurors must be instructed on the technical legal meaning of a word or phrase when that meaning is so different from the ordinary meaning that the jury could misunderstand the meaning of the phrase. *Streitmatter*, 981 P.2d at 925; *Compton v. State*, 931 P.2d 936, 941 (Wyo.1997). We recently held, however:

In this case, the district court gave the statutory definitions for those terms that were elements of the charged offense. Wilson contends, however, that error must be found for the failure to give as an

instruction the statutory definition for a term that is used in the statutory definition of one of the elements. The full phrase in the definition of a deadly weapon is "reasonably capable of producing death or serious bodily injury[.]" Wyo.Stat.Ann. § 6–1–104(a)(iv). The definition of serious bodily injury that Wilson requested would have duplicated the term "death" included in the instruction defining "deadly weapon." In the context of the charged offense, which requires only bodily injury as an element, the requested instruction had a definite potential for confusing the jury. As used in the definition of a deadly weapon, the term "serious bodily injury" does not have "a technical legal meaning so different from its ordinary meaning that the jury, without further explanation, would misunderstand its import in relation to the factual circumstances." *Compton*, 931 P.2d at 941. We conclude that the decision to give or refuse an instruction on the statutory definition of a term used in defining an element of an offense is within the latitude afforded to the district court to tailor the instructions to the circumstances of the case. No error occurred in the refusal of the district court to give this proffered instruction.

*Wilson v. State*, 14 P.3d 912, 916, (Wyo.2000). The rule of *Wilson* is that the standard articulated in *Streitmatter* and *Compton* does not require a jury instruction on the statutory meaning of "serious bodily injury." The injuries inflicted by Lucero were much more serious than the injuries described in *Wilson*, and obviously amounted to "serious bodily injury" under any possible definition of that term. No error would exist if this record did demonstrate the request for such an instruction, and in this instance the absence of that portion of the record constitutes harmless error.

**2.** These definitions are taken from Wyo.Stat.Ann. § 6–1–104(a) (Michie 1997), which provides, in pertinent part:

(a) As used in W.S. 6–1–101 through 6–10–203 unless otherwise defined:

(i) "Bodily injury" means physical pain, illness or any impairment of physical condition;
* * *

(iv) "Deadly weapon" means but is not limited to a firearm, explosive or incendiary material, motorized vehicle, an animal or other device, instrument, material or substance, which in the manner it is used or is intended to be used is reasonably capable of producing death or serious bodily injury[.]

■ Lucero's argument on his third issue addresses the element of causation in the charged offense. The district court instructed the jury that:

The elements of the crime of Aggravated Assault and Battery, as charged in this case, are:

1. On or about the 21st day of March, 1998, in Laramie County;
2. The Defendant, Pablo Lucero;
3. Intentionally and Knowingly *caused;*
4. Bodily injury to [the victim];
5. With a deadly weapon.

(Emphasis added.) Appropriately, Lucero does not dispute that his steel-toed boots can be considered deadly weapons. *See Warren v. State,* 835 P.2d 304, 308 (Wyo.1992) (soft shoes held to be deadly weapons as used) and *Osborn v. State,* 672 P.2d 777, 782 (Wyo. 1983), *cert. denied,* 465 U.S. 1051, 104 S.Ct. 1331, 79 L.Ed.2d 726 (1984) (victim killed with hand-held boot). Instead, the thrust of Lucero's argument is that his boots were the deadly weapon allegedly used, but the State did not prove that any of the victim's injuries were inflicted with the boots. He concludes, therefore, that the State failed to prove an element of the offense, and his conviction cannot stand.

■ When reviewing a claim of insufficient evidence, we assume that the evidence favoring the prevailing party is true, disregard the evidence favoring the unsuccessful party, and give the prevailing party the benefit of every favorable inference that we may reasonably draw from the evidence. *Wentworth v. State,* 975 P.2d 22, 25 (Wyo.1999) (*quoting Willis v. Willis,* 48 Wyo. 403, 49 P.2d 670, 678 (1935)). The State presented several photographs that graphically depicted the victim's injuries. A physician testified that those injuries "corresponded" with a report he received that the victim had been "struck and kicked multiple times about the face and head * * *." Another prosecution witness testified that Lucero kicked the victim ten to twenty times in the head and chest. A witness for the defense testified that Lucero kicked the victim once. Lucero initially told police that he had kicked the victim once in the head and once in the chest. The jury also heard testimony that blood and skin were found on the toes of Lucero's boots, and that some of the blood matched the victim's blood type. Viewed in the light most favorable to the State, the graphic evidence presented is more than adequate to support a conclusion that Lucero caused bodily injury to the victim by kicking him with steel-toed boots. We hold that sufficient evidence supports Lucero's conviction of aggravated assault and battery.

■ In his final assignment of error, Lucero challenges the district court's denial of his motion for a mistrial, which was based on alleged prosecutorial misconduct. Our review of the denial of a mistrial motion stemming from alleged prosecutorial misconduct is conducted under our abuse of discretion standard. *Capshaw v. State,* 958 P.2d 387, 390 (Wyo.1998). We have said that, in applying the standard:

We perceive the core of our inquiry as reaching the question of reasonableness of the choice made by the trial court. Henceforth, we will turn to a definition adopted in *Martin v. State,* 720 P.2d 894, 897 (Wyo. 1986), in which we said:

"Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. *Byerly v. Madsen,* 41 Wash.App. 495, 704 P.2d 1236 (1985)."

*Vaughn v. State,* 962 P.2d 149, 151 (Wyo. 1998).

The prosecutor's conduct to which Lucero takes exception occurred during the State's cross-examination of Lucero when the following exchange took place:

Q. But you fought after that?

A. I've had to fight, but I've never started a fight.

Q. Well, can you account for 50 disturbances before the city?

Lucero's trial counsel immediately objected, and the district court held a hearing outside the presence of the jurors. The State argued that Lucero's claim that he never started a fight opened the door for impeachment with his record of involvement in fifty-one

disturbances in which police officers were summoned, including nine assaults on police officers. The district court ruled that the State could ask Lucero about those incidents, but could not introduce extrinsic evidence of them.

Lucero insists that the State's cross-examination was improper impeachment under W.R.E. 609(a). That rule, however, governs the admissibility of evidence that a witness has been convicted of a crime. The prosecuting attorney did not ask about convictions, and W.R.E. 609(a) is inapplicable here. The only evidentiary rule mentioned by the district court in deciding the issue was W.R.E. 403, which provides that otherwise relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice * * *." The prosecuting attorney was engaged in cross-examination designed to provide a foundation for impeachment if Lucero denied such incidents. The district court's ruling reasonably balanced the State's right to impeach Lucero's claim that he never started a fight with Lucero's right to have unfairly prejudicial evidence excluded. The district court's ruling was reasonable under the circumstances, in accord with *Vaughn,* and we hold that the district court did not abuse its discretion.

Lucero has not sustained his burden of demonstrating reversible error resulting from any of the issues presented for review. We affirm the Judgment and Sentence of the district court in all respects.